[Civ. No. 2816.　Third Appellate District.—November 15, 1924.]

## THOMAS D. WATSON, Petitioner, v. F. H. GREELY, as Auditor, etc., Respondent.

[1] HIGHWAYS—CONSTRUCTION BY ADJOINING COUNTIES—MANDAMUS—FINDING—EVIDENCE.—In this *mandamus* proceeding involving the question whether a highway existed at the time of passage of an ordinance by a county granting permission to an adjoining county to use, and the right to use, the highway specifically described therein for the purpose of constructing and maintaining a road or boulevard, and providing for the joint construction by the two counties of any bridge necessary to be thereon constructed and maintained for the purpose and convenient use of said road by the public, and also at the time of passage of a resolution of the board of supervisors of the adjoining county, accepting the terms and conditions of said ordinance, the finding as to the existence of a highway or right of way for a public road at and prior to the time of passage of said ordinance and said resolution is supported.

[2] ID.—SUBDIVISION 12, SECTION 2639, POLITICAL CODE—CONSTRUCTION OF—DEFINITION OF HIGHWAYS.—The view that, to justify the adoption by "adjoining counties" of the course authorized by subdivision 12 of section 2639 of the Political Code, it must be made to appear that, at the time of such action by the boards of supervisors of the two counties, there is in existence over and upon the way a road upon which the "highway" or "boulevard" is proposed to be constructed and maintained, does not accord with the definition of the word "highways," as given by section 2618 of the Political Code, which defines highways as follows: "In all counties of this state public highways are roads, streets, alleys, lanes, courts, places, trails, and bridges, laid out or erected as such by the public, or if laid out or erected by others, dedicated or abandoned to the public, or made such in actions for the partition of real property."

[3] ID.—GRANT TO COUNTY FOR ROAD PURPOSES—EFFECT OF ACCEPTANCE.—Where a county has been granted a strip of land or a right of way over and upon such strip to be used and devoted to the purposes only of a county road, such strip or right of way being described with such certainty as to facilitate a ready identification thereof, the act of acceptance of such grant upon the part of the grantee county operates, *ipso facto*, to establish it as a highway of the county, and this regardless of whether there is or is not a road on such strip.

[4] ID.—DEDICATION—MEANING OF PHRASE "LAID OUT" AS USED IN SECTION 2618, POLITICAL CODE.—The grant and acceptance of a

strip of land to be used and devoted to the purposes only of a county road constitute a dedication of such strip to county road purposes. This amounts to the setting apart of the strip so dedicated for such road purposes, and the marking out or setting apart of a strip of land for such purposes is what it is reasonable to assume is meant by the phrase "laid out," as it is used in section 2618 of the Political Code.

[5] ID. — SECTION 2618, POLITICAL CODE — CONSTRUCTION — INTENT OF LEGISLATURE.—The circumstance that the phrase "laid out" and the word "erected" are disjunctively connected in section 2618 of the Political Code justifies the implication that the legislature, in defining highways, intended to assign them to two different classifications, to wit: 1. Where the right of way over a strip of land or the strip itself, if the fee is owned by the county or the public, has been set apart according to a definite description and appropriated to road purposes, and upon which no road at all or an improved road, according to the modern standard of road building, has been built; 2. Where the highway has not only been "laid out" or set apart for road purposes, but upon and over it a road has been erected and is being maintained.

[6] ID.—SECTION 4, POLITICAL CODE—CONSTRUCTION.—The rule of section 4 of the Political Code that the provisions of said code and all proceedings under it "are to be liberally construed, with a view to effect its objects and to promote justice," means that, where necessary to do so to impart to it the true purpose of its enactment, a statute should be given a broad construction or its words and phrases a like interpretation.

[7] ID.—ROAD AND HIGHWAY LAWS—DESIGN OF.—The road and highway laws are designed to encourage and facilitate the building of public roads in accordance with the demands of present-day conditions and needs, and no construction should be given those laws which would make their application impracticable or infeasible or unreasonably difficult, unless their language, in certain particulars, affords no other alternative.

[8] ID.—WORDS AND PHRASES.—To erect is to construct and to construct is to erect, when using the terms to express the fact of the building of a structure or other work.

---

(1) 29 C. J., p. 405, sec. 53.    (2) 29 C. J., p. 405, sec. 53.    (3) 29 C. J., p. 405, sec. 53.    (4) 29 C. J., p. 405, sec. 53.    (5) 29 C. J., p. 401, sec. 49.    (6) 29 C. J., p. 401, sec. 49.    (7) 29 C. J., p. 401, sec. 49.    (8) 21 C. J., p. 819.

PROCEEDING in Mandamus to compel the auditor of Yuba County to issue warrant for certain services. Writ granted.

The facts are stated in the opinion of the court.

T. H. Christiansen, W. H. Carlin and Arthur Coats for Petitioner.

Ray Manwell, District Attorney, C. E. McLaughlin and C. P. McLaughlin for Respondent.

HART, J.—An opinion passing upon and determining the legal questions involved herein favorably to the petitioner was filed in this court on the seventeenth day of May, 1924. (*Watson* v. *Greely,* 67 Cal. App. 328 [227 Pac. 664].) Contemporaneously with the filing of the demurrer by which the legal points were raised, an answer to the petition was filed tendering certain issues of fact. It was stipulated by and between counsel for the respective sides that the legal points might be determined by this court and that if such determination were, against the contentions of the respondent, then the issues of fact should be referred to the superior court in and for the county of Yuba for trial and determination, that upon such trial and determination the findings and the trial court's conclusions from the facts should be returned to this court, and that, if the former court's findings were in accord with the facts as alleged in the petition, then a writ of mandate directed to and requiring the respondent to issue his warrant to and in favor of the petitioner for the amount of his claim against the county of Yuba as alleged in the petition was to issue out of this court. The legal points raised by the demurrer to the petition having been decided by this court in harmony with the several contentions of the petitioner, in pursuance of the stipulation referred to an order was made by this court on the seventeenth day of May, 1924, referring the matter of the trial and decision of the questions of fact to the superior court of Yuba County, the final action or the judgment of this court with respect to the relief prayed for by the petitioner to remain in abeyance until the findings of the trial court upon the issues of fact were returned to and filed in this court.

In accordance with the order of reference mentioned, the same, with the petition and the answer thereto, together with a copy of the opinion of this court disposing of the legal points, was duly certified by this court to the said trial

court, and the latter court, on the twelfth day of July, 1924, proceeded with the trial of the issues of fact, and, upon the conclusion of the taking of the testimony, made its written findings and conclusions therefrom. These findings and conclusions, together with the transcript of the testimony taken at the hearing of the issues of fact, duly certified, were thereafter transmitted to and filed in this court. The findings are substantially in the language of the averments of the petition, and the facts stated in the petition are set out with considerable detail in the opinion heretofore filed herein. (*Watson* v. *Greely,* 67 Cal. App. 328 [227 Pac. 664].) It will, therefore, not be necessary to restate herein the facts alleged in the petition.

The matter is now before us upon exceptions to the findings upon the ground that, in certain particulars, or rather in a certain particular, they derive no support from the evidence adduced before the trial court and certified to this court. These exceptions are addressed to findings 6, 7, 8, 9, and 10. By finding 6 it is found that the highway described in the petition and also in the ordinance of the board of supervisors of the county of Sutter and the resolution of the board of supervisors of the county of Yuba, both said ordinance and said resolution being set out in full in the petition herein, has existed in the county of Sutter for a period of "more than one year prior and up to the date of the commencement of this action." Finding 7 is to the effect that, to make the portion of said highway which extends across the changed channel of Bear River and for a distance northerly and northwesterly from where it crosses said channel of said river "passable and of use to the traveling public, including the residents of the Counties of Yuba and Sutter, it is necessary that said highway be placed and remain in good repair and that a good and sufficient bridge be constructed and maintained as a part of said highway across said channel of Bear River." By findings 8, 9, and 10 it is found, as the petitioner herein alleges, that the board of supervisors of the county of Sutter, on the fifth day of November, 1923, duly passed an ordinance whereby permission was granted to the county of Yuba to use, and the right to use, the highway specifically described therein for the purpose of constructing and maintaining a road or boulevard, and providing for the joint construction by Yuba and

Sutter Counties of any bridge necessary to be thereon constructed and maintained for the purpose and convenient use of said road by the public; that said ordinance was "thereafter duly approved by the Chairman of said Board of Supervisors of said County of Sutter and published as required by law, and the same is in full force and virtue"; that (finding 10) the board of supervisors of Yuba County, by resolution duly adopted, on the thirteenth day of December, 1923, accepted said ordinance passed by said county of Sutter and all the terms and conditions therein set forth and contained.

There was no denial in the answers to the petition for the writ herein sought of the adoption and passage of the ordinance and the resolution of the boards of supervisors of the counties of Sutter and Yuba, respectively, and hence whether those measures were or were not adopted and passed as alleged in the petition and as set forth in the findings was not among the issues remanded to the trial court for trial. The adoption of those measures, because of the fact that there was no denial of their adoption, was and is an admitted fact in this proceeding. The specific, and, indeed, the only objection to the findings is, therefore, not that the said ordinance of the board of supervisors of Sutter County and the resolution of the board of supervisors of Yuba County, accepting the terms and conditions of said ordinance, were not, in point of fact, duly adopted, passed, and approved by the respective boards of supervisors, but that the facts and the conditions essential to the giving of said boards jurisdiction to adopt, pass, and approve said measures are not shown by the evidence to have existed prior to and at the time of the adoption and passage thereof or at the time of the initiation of this proceeding. In other words, the gravamen of the objections of the respondent to the findings is that, at the time of the passage of said measures, there did not exist, nor did there ever, or does there now, exist, a highway as described in the ordinance and also in the resolution and in the findings.

[1] The finding as to the existence of a highway or a right of way for a public road at and prior to the time of the passage of the ordinance by the county of Sutter and the resolution by the county of Yuba, accepting the terms and conditions thereof, is supported. It is not necessary to

state in detail herein the evidence or even the substance thereof introduced at the trial of the question of fact as to whether the highway described did exist. It is enough to say that it was shown that the particular strip of land described in said ordinance was, on the tenth day of October, 1921, for highway purposes, conveyed to the county of Sutter by the Natomas Company, a corporation; that said county duly accepted said grant for the purposes stated; that other deeds were executed by the same company granting to the counties of Yuba and Sutter, for the same purpose, substantially, if not precisely, the same land; that the proposed way is connected by a direct road, in existence for many years, with the state highway extending from the city of Marysville to the city of Sacramento, via the town of Wheatland; that said proposed way is also connected with the public highway extending from the city of Sacramento, via the town of Pleasant Grove, in Sutter County, to a point south and east of Bear River, and a short distance from the point at which it is proposed to erect a bridge over said river connecting the road running in a direct southerly line from the city of Marysville to said bridge site. As to this portion of the way the witness Meek, county surveyor of Yuba County, testifiying for the respondent, stated: "There is an open stretch over which cars pass. I went over it myself, it can hardly be called a road, but it is open and there is a defined line apparently running alongside of it, as far as the present site of Bear River." The line of the Pleasant Grove highway, it should be stated, is some miles west of the line or route of the state highway between Marysville and Sacramento, via the town of Wheatland. This fact appears from the map introduced and used at the trial of the facts and which was transmitted to this court with the record of the evidence and the findings of said trial.

[2] It seems to be the view of the respondent that, to justify the adoption by "adjoining counties" of the course authorized by subdivision 12 of section 2639 of the Political Code, it must be made to appear that, at the time of such action by the boards of supervisors of the two counties, there is in existence over and upon the way a road upon which the "highway" or "boulevard" is proposed to be constructed and maintained. The position of the respond-

ent does not accord with the definition of the word "highways," as given by section 2618 of the Political Code. Said section defines highways as follows: "In all counties of this state public highways are roads, streets, alleys, lanes, courts, places, trails, and bridges, laid out or erected as such by the public, or if laid out or erected by others, dedicated or abandoned to the public, or made such in actions for the partition of real property."

[3] It is clear that where, as here, a county has been granted a strip of land or a right of way over and upon such strip to be used and devoted to the purposes only of a county road, such strip or right of way being described with such certainty as to facilitate a ready identification thereof, the act of acceptance of such grant upon the part of the grantee county operates *ipso facto* to establish it as a highway of the county, and this regardless of whether there is or is not a road on such strip. [4] The grant and the acceptance thereof constitute a dedication of such strip to county road purposes. This amounts to the setting apart of the strip so dedicated for such road purposes, and the marking out or setting apart of a strip of land for such purposes is what we think it reasonable to assume is meant by the phrase "laid out," as it is used in section 2618 of the Political Code. It is perhaps true, as was said in *Mansur* v. *County Commrs.*, 83 Me. 514 [22 Atl. 358], that the phrase "laid out" may appropriately be used in describing different conditions of a way—that it may properly be used to describe a way that has been improved or a way that is being built or improved, as well as a way "voted to be built" but not built. The meaning of the expression in a particular case must be determined from the context of the statute in which it is used. First it is to be observed that the words "laid out" do not in themselves imply the building or construction of a structure or other work. One about to build a house would not say that he intended to "lay out" a house, much less would he say after it was built or completed that it has been "laid out." Nor would those words be the apt ones to use in expressing the idea of the building and completion of a levee or a canal or a ditch. Hence, it is only reasonable to assume that if the legislature, in defining highways, intended to say that only such ways as had roads upon them were county highways,

it would not have used the phrase "laid out" as descriptive thereof, but would have said that those ways only are highways upon and over which roads have been built, and, naturally, would have employed more apposite words or phrases in defining the same. In lieu of the phrase "laid out" the words "built" or "erected" or "constructed" would have been more appropriate and probably used. [5] Moreover, the circumstance that the phrase "laid out" and the word "erected" are disjunctively connected in section 2618 justifies the implication that the legislature, in defining highways, intended to assign them to two different classifications, to wit: 1. Where the right of way over a strip of land or the strip itself, if the fee is owned by the county or the public, has been set apart according to a definite description and appropriated to road purposes, and upon which no road at all or an improved road, according to the modern standard of road building, has been built; 2. Where the highway has not only been "laid out" or set apart for road purposes, but upon and over it a road has been erected and is being maintained.

It might, however, be argued that the word "erected" in said section was intended to refer to bridges and not to roads, hence the circumstance that the words "laid out" and the word "erected" are disjunctively connected is not significant of an intention to differentiate between a highway merely laid out or not improved and a highway upon which a road has been built. [6] The rule of the Political Code (sec. 4) is that its provisions and all proceedings under it "are to be liberally construed, with a view to effect its objects and to promote justice." This means that, where necessary to do so to impart to it the true purpose of its enactment, a statute should be given a broad construction or its words and phrases a like interpretation. Of course, this is upon the assumption that the statute is designed to achieve some necessary and useful purpose. We know of no other branch of our system of laws in the practical application of which that rule should the more liberally be invoked than that relating to public road construction. The roads of counties, as well as intercounty or state roads, have in recent years become singularly potent as agencies for the development of the resources and the industrial and the commercial interests of a state, and as now required to be built

or improved, by reason of the new methods or means of transportation introduced in recent years, they cannot be dispensed with or could not be without a return to the slow processes for such development of former days. [7] The road and highway laws are designed to encourage and facilitate the building of public roads in accordance with the demands of present-day conditions and needs, and no construction should be given those laws which would make their application impracticable or infeasible or unreasonably difficult, unless their language, in certain particulars, affords no other alternative, in which case, in the interest of the public or common good, they should be amended so as to render their enforcement less burdensome.

Thus looking at the word "erected," as used in section 2618, and giving to it that broad interpretation which seems to be necessitated because of its necessary application to or connection with other code sections or statutes relating to roads and highways, it is easy to understand how the legislature could have intended that it should include all necessary acts (such as grading, excavating, bridge building, etc.) for the building of county roads. This interpretation is in accord with the meaning of the word "erected" as it is given in the dictionaries, which state that the word is in one sense synonymous with the word "constructed." [8] To erect is to construct and to construct is to erect, when using the terms to express the fact of the building of a structure or other work. The two words have frequently been used interchangeably or as importing the same meaning in statutes relating to and providing schemes for public road building. (See, for instance, *Merservey* v. *Gulliford,* 14 Idaho, 133 [93 Pac. 780, 788].)

It may be added to what has been said above that it is worthy of note that subdivision 12 of section 2639 of the Political Code does not, *eo nomine*, refer to roads. The language is, "any of its public highways." While it would not do to say that the language of said subdivision does not also include highways over which unimproved roads pass and which, to be of convenient use by the public, require improvement, it certainly can have no reference to highways already equipped with improved roads, according to the modern notion or method of such improvement.

But the case of *Venice* v. *Short Line Beach Land Co.*, 180 Cal. 447 [181 Pac. 658], we conceive is decisive of the proposition. That case supports the interpretation of the word "highway," as we understand it to mean under the definition as given by section 2618, and it is in point here, notwithstanding that that case deals with a situation different from that presented here. In the opinion, of which former Chief Justice Shaw was the author, it is said: "There is no merit in the appellant's contention that section 325 of the Code of Civil Procedure, prescribing the conditions necessary to an adverse possession of the land, is applicable to this question. Land used for a highway could not be inclosed or cultivated, *and no improvement thereof by the public authorities is necessary to constitute it a highway.* The law relating to highways is indicated by section 2618 of the Political Code, declaring that such highways are roads, streets, alleys, etc., 'laid out or erected as such by the public, or if laid out or erected by others, dedicated or abandoned to the public.' To accomplish such dedication or abandonment and acceptance by the public, *neither improvement of the way by public authority,* nor payment of taxes by the public, is necessary. All that is required is a dedication or abandonment by the owner and an acceptance thereof by the public." (See, also, 29 C. J. 363, 364.)

Our conclusion is that the highway in question comes within the category of those referred to in subdivision 12 of section 2639 of the Political Code, and that the proceedings instituted by the counties of Yuba and Sutter as to said highway in pursuance of the provisions of said section are in all respects valid.

Accordingly, upon the authority of the opinion heretofore filed herein and the instant opinion, it is ordered that a writ of mandate as prayed for by the petitioner herein, issue out of this court.

Plummer, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 12, 1925.