[No. H004515. Sixth Dist., Dec. 27, 1989.]

VICTOR RINK et al., Plaintiffs and Appellants, v.
CITY OF CUPERTINO, Defendant and Appellant.

COUNSEL

Joseph M. Gughemetti, David C. Spangenberg and Gughemetti & Spangenberg for Plaintiffs and Appellants.

David H. Waters, Allan E. Low and Tarkington, O'Connor & O'Neill for Defendant and Appellant.

OPINION

PREMO, J.—Plaintiffs Victor Rink, Leo Bianchi, Helen Bianchi, Peter S. Bianchi, Marcia Bianchi, and Laura Bianchi appeal from a judgment in

favor of defendant City of Cupertino (hereafter, the City). The City cross-appeals that portion of the judgment which denies its request for attorney fees and costs. We affirm in both appeals.

FACTS

Plaintiffs, who are members of the same family, are the owners of residential lots in an area called Inspiration Heights in the City of Cupertino. Certain roadways abut these lots. Plaintiffs claim that these roadways are city streets within the meaning of Streets and Highways Code section 1805, and thus the City is under duty not only to maintain them but also to improve them to the standards applicable to subdivisions.

The subject roadways are actually dirt trails traversing over steep slopes and through canyons. They were drawn into a 1917 subdivision map filed with the County of Santa Clara (hereafter, the County) and opened without taking into account the topography of the area. The subdivision map contains a notation that the roads were not dedicated to public use.

On July 5, 1946, Thomas Gally and Melvin Mensor executed a quitclaim deed in favor of the County in which they transferred their interest in the roadways to the County "for use as a public road and highway." The County accepted the quitclaim deed by formal resolution of its board of supervisors.

In 1968, plaintiffs purchased Inspiration Heights. In 1976, Inspiration Heights remained within the jurisdiction of the County but under the City's "Sphere of Influence." In 1980, the City annexed Inspiration Heights pursuant to the provisions of the Municipal Reorganization Act.

In June 1986, plaintiffs wrote to the City, formally demanding that the City "improv[e] the streets to a safe and usable condition under applicable subdivision requirements . . . ." When the City rejected plaintiffs' claim, plaintiffs brought this suit.

The City's motion for summary judgment was granted, but its request for attorney fees and costs was denied.

DISCUSSION

■ Plaintiffs raise a number of arguments, all of which, stripped of excess verbiage, boil down to one decisive issue: Does Streets and Highways Code section 1806 control this case? We hold it does.

Streets and Highways Code section 1806[1] provides: "No public or private street or road shall become a city street or road until and unless the governing body, by resolution, has caused said street or road to be accepted into the city street system; nor shall any city be held liable for failure to maintain any road unless and until it has been accepted into the city street system by resolution of the governing body."

Plaintiffs contend that section 1806, which was enacted into law in 1957, does not apply because the subject roadways were dedicated and accepted for public use as county highways in 1946, which was 11 years prior to the passage of section 1806. Plaintiffs argue that section 1806 cannot be applied retroactively.

Plaintiffs contend as follows:

1.   Although the 1917 subdivision map did not dedicate the subject roadways for public use, there was a dedication in 1946 when Thomas Gally and Melvin Mensor quitclaimed in writing their interest therein to the County "for use as a public road and highway" and the County accepted the quitclaim deed by formal resolution of its board of supervisors.

2.   Hence, when the City annexed Inspiration Heights in 1980, the roads automatically became city streets, pursuant to section 989, which reads: "Except as otherwise specifically provided in this code upon the incorporation of a city or upon the annexation of territory to a city, all right, title and interest of the county, including the underlying fee where owned by the county, in and to any county highway with the territory involved, shall vest in the city and shall thereupon constitute a city street. [¶] All right, title and interest of the county in and to any county highway included within territory heretofore incorporated as a city or annexed to a city is hereby determined to have vested in such city as a city street. For the purpose of this section 'county highway' shall have the meaning ascribed to that term by Section 960.5."

3.   Since the roadways became city streets by the fact of annexation, the City was under a duty to maintain and improve them to applicable subdivision standards. The record does not show what those standards are, but they cannot be below the statutory requirement of section 1805, that "[t]he width of all city streets, except state highways, bridges, alleys, and trails, shall be at least 40 feet . . . ."

4.   Because the City refused plaintiffs' written demand to maintain and improve the roadways "to a safe and usable condition under applicable subdivision requirements," plaintiffs suffered damage.

---

[1] Further statutory references are to the Streets and Highways Code unless otherwise specified.

5. The City is liable for the resulting damage under theories of nuisance, inverse condemnation, and violation of their rights under the Federal Civil Rights Act.[2]

Plaintiffs' argument totally ignores the import of section 1806. Under section 1806, the City is immune from liability for failure to maintain any road that has not been accepted into the city street system by resolution of its governing body. Here, it is not disputed that the City's governing body has not accepted the subject roadways into its city street system.

Plaintiffs contend, however, that section 1806 cannot be applied retroactively; that what should be applied are the statutory and common law rules as they existed in 1946 when the County accepted the quitclaim deed; that under these common law rules, the quitclaim deed was a valid dedication and the acceptance thereof by the County operated to make the roadways county highways (*Watson* v. *Greely* (1924) 69 Cal.App. 643, 649 [232 P. 475]), and hence, the City has a duty to maintain them since they became city streets upon their annexation. The contention is without merit.

We do not see the issue as one of retroactive application of section 1806. Rather, the issue is whether the City lost its immunity under section 1806 by annexing the subject roadways. At the time the City annexed Inspiration Heights in 1980, section 1806 was already the governing law. Under that law, the City had the right to accept any roadway into its city street system. The power to accept implies the power to reject. The City's power of choice was not nullified by the historical account of how the roadways became county highways. Therefore, the fact that the roadways were dedicated and accepted as county highways prior to the annexation is immaterial.

Acceptance into the street system must be by formal resolution of the governing body. Section 1806 does not permit acceptance by implication or by any of the common law methods sanctioned by courts in earlier times. The cases of *Union Transp. Co.* v. *Sacramento County* (1954) 42 Cal.2d 235 [267 P.2d 10] and *Watson* v. *Greely, supra,* 69 Cal.App. 643, relied upon by plaintiffs, which recognized common law methods of acceptance in various forms, are no longer controlling, precisely because section 1806 was enacted to disapprove them. (*Benitez* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 918, 921 [144 Cal.Rptr. 15].)

■ Section 1806 is in reality a recognition of the inherent power of governments to control land use. "Land use regulations . . . involve the exercise of the state's police power [citation], and it is settled that the

---

[2] Plaintiffs' complaint also asked for declaratory relief.

government may not contract away its right to exercise the police power in the future. [Citations.]" (*Avco Community Developers, Inc.* v. *South Coast Regional Comm.* (1976) 17 Cal.3d 785, 800 [132 Cal.Rptr. 386, 553 P.2d 546].) It is also an expression of the policy " 'to require the subdivider to do the original work of placing the streets in a proper condition before the maintenance thereof is taken over by a city or county, and to relieve the public to this extent of the burden that would otherwise exist.' " (*County of Kern* v. *Edgemont Dev. Corp.* (1963) 222 Cal.App.2d 874, 879 [35 Cal.Rptr. 629], quoting *Hoover* v. *County of Kern* (1953) 118 Cal.App.2d 139, 142 [257 P.2d 492].)

■ Consequently, when the City annexed Inspiration Heights in 1980, it did so subject to its explicit power under section 1806 not to accept into its city street system any roadway that might not meet the safety, engineering, soils, and other feasibility standards for city streets. Indeed, the vesting of "all right, title and interest of the county . . . in and to any county highway within the territory involved" in the acquiring city and the constitution thereof into city streets under section 989, is not absolute. That section expressly recognizes an exception: "Except as otherwise specifically provided in this code . . . ." Section 1806 comes under that exception.

■ Plaintiffs contend that the City has a constitutional duty to maintain the streets in a safe and usable condition so as to guarantee access to those subdivision lots previously approved by the government. It is obvious, however, that this duty exists only with respect to streets that are part of the City's street system. Where as here, the subject roadways are not part of the City's street system, obviously the constitutional duty invoked by plaintiffs does not apply.

■ Plaintiffs contend that the City may not renounce its obligations to maintain city streets without a formal abandonment hearing and payment of just compensation. Since this argument is premised on the roadways forming part of the City's street system, and since that is not the fact, the argument is academic. The City had nothing to renounce.

■ Plaintiffs' contention that they have established disputed facts which as a matter of law should allow them to proceed with their claims is without merit because the alleged disputed facts do not at all bear on the issue of whether the subject roadways were accepted by the City by resolution of its governing board, as required by section 1806. That there was no such acceptance is not disputed.

The remaining contentions of plaintiffs are based on the assumption that the City was bound by a common law duty of maintenance at the time it

annexed the subject roadways. Since we have concluded that the City had no such duty, those contentions must perforce be rejected.

*Cross-appeal*

The City contends that under Code of Civil Procedure section 1038,[3] it should be awarded defense attorney fees and costs on the basis that this action was not maintained in good faith or with reasonable cause. We disagree.

■ It is not disputed that in 1946, the County formally accepted by board resolution the quitclaim deed executed in its favor by Thomas Gally and Melvin Mensor. Although we have concluded that the acceptance of the quitclaim deed by the County did not impose upon the City the duty to maintain the deeded roadways absent a formal resolution by its governing body accepting the roadways into its city street system, pursuant to section 1806, we find legitimate the legal issues raised in this case. There is no evidence of lack of good faith in submitting the issue to court for judicial resolution. The trial court did not, therefore, abuse its discretion in denying the City's request for attorney fees and costs.

The judgment is affirmed. Each party to bear their own costs on appeal.

Agliano, P. J., and Elia, J., concurred.

A petition for a rehearing was denied January 16, 1990, and the petition of plaintiffs and appellants for review by the Supreme Court was denied March 14, 1990.

---

[3] Code of Civil Procedure section 1038 states, in relevant part: "(a) In any civil proceeding under the California Tort Claims Act or for express or implied indemnity or for contribution in any civil action . . . . If the court should determine that the proceeding was not brought in good faith and with reasonable cause, an additional issue shall be decided as to the defense costs reasonably and necessarily incurred by the party or parties opposing the proceeding, and the court shall render judgment in favor of that party in the amount of all reasonable and necessary defense costs, in addition to those costs normally awarded to the prevailing party. [¶] (b) 'Defense costs,' as used in this section, shall include reasonable attorneys' fees, expert witness fees, the expense of service of experts, advisers, and consultants in defense of the proceeding, and where reasonably and necessarily incurred in defending the proceeding. . . ."