[No. B083097. Second Dist., Div. One. Nov. 9, 1995.]

RE-OPEN RAMBLA, INC., et al., Plaintiffs and Respondents, v.
BOARD OF SUPERVISORS OF LOS ANGELES COUNTY et al.,
Defendants and Appellants;
CITY COUNCIL OF THE CITY OF MALIBU, Defendant and
Respondent.

## COUNSEL

Wasserman, Comden & Casselman, David B. Casselman, Catherine S. Garcia and Paul Kujawsky for Defendants and Appellants.

Scott L. Grady, Robert A. Karpuk, Crosby, Heafey, Roach & May, Gideon Kanner and M. Reed Hunter for Plaintiffs and Respondents.

Christi Hogin, City Attorney, Richards, Watson & Gershon, Steven H. Kaufmann and Michael G. Colantuono for Defendant and Respondent.

## OPINION

**ORTEGA, J.**—A portion of Rambla Pacifico Road[1] in what is now the City of Malibu (City) and earlier was within the County of Los Angeles (County) was blocked by earth movement and closed by the County in 1984. Re-Open Rambla, Inc. (ROR), whose members include affected homeowners, wants the Road reopened but first must determine who owns the portion lying within the City, incorporated in 1991. The City asserts the Road is owned by the County; the County claims it is owned by the City. The question turns on interpretation of sections 989 and 1806 of the Streets and Highways Code, based on which we conclude that the City owns the governmental interest in the Road. We reverse the summary judgment which determined that the County owned the Road.

## BACKGROUND

The relevant facts are undisputed. The Legislature amended section 941 in 1955 and enacted Streets and Highways Code section 1806 in 1957.[2] (Stats. 1957, ch. 1397, § 1, p. 2731.) As enacted, and until January 1, 1992, section 1806 provided that no street or road would become a city street or road until the city's governing body, by resolution, accepted it. The amendment to section 941 included a similar provision concerning acceptance into a county road system. (Stats. 1955, ch. 1219, § 2, p. 2232.)

In 1963, the Legislature enacted section 989, which provided for transfer to a city of a county's right, title and interest in a county road upon the city's annexation of territory in which the road was located, subject to the prefatory phrase "[e]xcept as otherwise specifically provided in this code[.]" (Stats. 1963 ch. 281, § 1, p. 1041.) In 1967, the Legislature amended section 989 to include incorporation, as well as annexation, as a triggering event for such transfer. (Stats. 1967, ch. 1328, § 1, p. 3160.)

In 1984, the County closed a portion of Rambla Pacifico, approximately one-half mile from its intersection with Pacific Coast Highway, because of earth movement. In July 1989, ROR filed its "Complaint for Declaratory Relief, and Preliminary and Permanent Injunction to Abate a Public Nuisance; Petition for Writ of Mandate" against the County. ROR asked the court to declare that the County had a duty to repair, maintain and restore, or properly vacate Rambla Pacifico, order abatement of the blockage, which

---

[1]References to the "Road" or to "Rambla Pacifico" are to the portion of Rambla Pacifico Road lying within the boundaries of the City of Malibu.

[2]Statutory references are to the Streets and Highways Code unless otherwise specified.

ROR asserted was a public nuisance, or direct the County to either vacate Rambla Pacifico or carry out its repair, restoration and maintenance.

In December 1989, *Rink v. City of Cupertino* (1989) 216 Cal.App.3d 1362 [265 Cal.Rptr. 404], held that the City of Cupertino could annex unincorporated county land "subject to its explicit power under section 1806 not to accept" into its street system any roadway that might not meet the standards for a city street. (*Id.* at p. 1368.) *Rink* reasoned that the vesting provision of section 989 was not absolute and that section 1806 was a qualifying exception under section 989's prefatory phrase "[e]xcept as otherwise specifically provided in this code[.]" (*Ibid.*)

On March 28, 1991, the City was incorporated. On May 21, 1991, the city council passed Resolution No. 91-40, accepting into the City street system all of the County system of streets lying within the City's borders except three streets, one of which was Rambla Pacifico.

Effective January 1, 1992, the Legislature amended sections 989 and 1806. As amended by chapter 531, section 3 of the 1991 Statutes, section 989 now reads as follows:

"(a)(1) Upon the incorporation of a city or upon the annexation of territory to a city, all right, title, and interest of the county, including the underlying fee where owned by the county, in and to any county highway within the territory involved, which had been accepted into the county road system pursuant to Section 941 shall vest in the city and shall thereupon constitute a city street.

"(2) All right, title, and interest of a county in and to any county highway included within territory heretofore incorporated as a city or annexed to a city is hereby determined to have vested in the city as a city street.

"(b) Subdivision (a) does not apply to a road or highway which had been accepted into the county road system pursuant to Section 941 after the date of the first signature on a petition for annexation or incorporation, the adoption of a resolution of application by an affected local agency, or a date mutually agreed upon by the city and county.

"(c) Nothing in subdivision (a) requires a city to improve the affected road or highway to city standards." (Stats. 1991, ch. 531, § 3.)

Section 1806 was amended to read: "Except as provided by Section 989, or by Section 57329 or 57385 of the Government Code, no public or private

street or road shall become a city street or road until the governing body, by resolution, has caused the street or road to be accepted into the city street system; nor shall any city be held liable for failure to maintain any road until it has been accepted into the city street system by resolution of the governing body." (Stats. 1991, ch. 531, § 4.)[3]

Section 5 of the 1991 legislation provided in relevant part: "It is the intent of the Legislature to abrogate the holding of the Court of Appeal in Rink v. City of Cupertino . . . to the extent that the holding would cause a road or highway which was part of a county road system to remain within the county road system after the territory in which the road or highway is situated becomes the territory of a city through annexation or incorporation proceedings. It is, and always has been, the intent of the Legislature that roads or highways which have been accepted into the county road system . . . and which are situated in an area which is subsequently incorporated or annexed to a city, be included within the city street system upon that incorporation or annexation. Accordingly, Sections 1 to 4, inclusive, of this act are intended to clarify existing law without substantive change." (Stats. 1991, ch. 531, § 5.)

In June 1993, ROR filed a "Verified Supplemental and Amended Complaint" for "mandamus, injunction and declaratory relief," adding the City as a defendant and respondent. The first cause of action sought a writ of mandate compelling the County or the City to reopen or vacate Rambla Pacifico. The second cause of action sought a permanent injunction compelling the County or the City to abate the nuisance of the closed Road. The third cause of action sought a judicial determination of the meaning of sections 989 and 1806 and Government Code sections 57329, subdivision (a) and 57385, subdivision (a) and a declaration of whether the County or the City was responsible for reopening the road.

The City demurred and moved for summary judgment on the ground that it neither owned nor controlled the Road because following its incorporation, the City had specifically rejected including Rambla Pacifico in its street

---

[3]The same enactment added sections 57329 and 57385 to the Government Code, essentially including in that code provisions correlative to section 989. (Stats. 1991, ch. 531, §§ 1-2.)

Section 1806 was again amended by Statutes 1993, chapter 1195, section 26. The single sentence was divided into subdivisions (a) and (b), and subdivision (c) was added, prescribing the procedure by which a city's governing body may designate a city officer to accept and record conveyances under the statute. (Stats. 1993, ch. 1195, § 26.)

system. The County moved for summary judgment on the ground that governmental ownership and control of the Road were automatically transferred to the City on its incorporation. ROR filed a motion for summary judgment which essentially duplicated the City's motion. The court granted the City's motion for summary judgment and ordered the County's motion off calendar as moot. The court took no action with respect to the City's demurrer or ROR's motion for summary judgment. A formal order granting the City's summary judgment was later entered and the judgment thereon filed. The County appeals from the judgment in favor of the City. ROR supports the City's contention that the County owns the governmental interest in Rambla Pacifico.

## THE PARTIES' CONTENTIONS

The County argues that before the decision in *Rink* v. *City of Cupertino*, *supra*, 216 Cal.App.3d 1362, a city's incorporation automatically vested title to county highways in the city and contends that the *Rink* decision is either inapplicable in this case or wrongly interpreted sections 1806 and 989. The County further claims that the Legislature's enactment of the 1991 legislation, in abrogating *Rink*, simply clarified the earlier enactments, thus restoring the status quo ante. The City and ROR, on the other hand, contend that the City does not own Rambla Pacifico Road because the City specifically rejected its inclusion into the City road system following its incorporation, that *Rink* was properly decided and applies to this case, and that the 1991 legislation makes unmistakable changes in the law and may not be retroactively applied to this case. We hold that the County's right, title and interest in the portion of Rambla Pacifico Road lying within the boundaries of the City of Malibu vested in the City upon its incorporation.

## DISCUSSION

Two sets of principles guide our review in this case in which summary judgment was granted concerning statutory meaning and effect. ■ With respect to the summary judgment, after examining the facts before the trial court on the motion, we independently determine their effect as a matter of law. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].) ■ Where, as here, the material facts are undisputed and the trial court's decision turns on statutory interpretation, that interpretation is a matter of law subject to de novo review. (*Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951 [268 Cal.Rptr. 624].)

With regard to the relationship between sections 989 and 1806, "[p]ursuant to established principles, our first task . . . is to ascertain the intent of

the Legislature so that we effectuate the purpose of the law. ▮ In determining legislative intent, we look first to the words of the statute themselves, giving to the language its usual, ordinary meaning. The language must be construed in context and provisions relating to the same subject matter must be harmonized to the extent possible. If the meaning is without ambiguity or uncertainty, then the language controls and there is nothing to interpret or construe. However, if the meaning is not clear, we consider the legislative history of the statute and the historical circumstances of its enactment in ascertaining the legislative intent. Finally, if the first two steps fail to reveal clear meaning, we apply reason, practicality and common sense to the language. If possible the words should be interpreted to make them workable and reasonable, in accord with common sense and justice, and avoid an unjust or absurd result. [Citations.]" (*Lopez* v. *Tulare Joint Union High School Dist.* (1995) 34 Cal.App.4th 1302, 1322-1323 [40 Cal.Rptr.2d 762].) We will now apply these principles to the subject matter at hand.

The origin of section 1806 lies in the common law of dedication of an interest in land to the public for a public use, under which an owner may show his intention to dedicate by an explicit offer which may be written or oral. The offer also "may be inferred from the owner's long acquiescence in a public use of the property under circumstances which negative the idea that the use was under a license" or from adverse and continuous public use. (*Union Transp. Co.* v. *Sacramento County* (1954) 42 Cal.2d 235, 240-241 [267 P.2d 10].) The offer, however, "must be *accepted* by the public[,] [a]nd acceptance may be formal, as by resolution or ordinance, or by user. [Citations.]" (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 123, p. 339.)

In *Union Transportation*, the court addressed a claim for property damage caused by the collapse of a bridge near the border of Sacramento and El Dorado Counties. The bridge's rotting timbers collapsed when a truck loaded with cattle crossed it. The trucking company and the cattle owners sued both counties. The appeal followed an order granting the counties' motions for nonsuit. The question was whether the plaintiffs had presented sufficient evidence to require submitting the issue of liability to the jury. Two aspects of the decision are instructive in this case. First, the court concluded that while public use alone might constitute acceptance for purposes of the public's right to use the road, acceptance by public use alone would not suffice where the issue was one of governmental liability for failure to maintain. Second, the court held that, although "some official action consistent with an acceptance of the dedication" was required, no "formal act of

acceptance" was necessary. (*Union Transp. Co.* v. *Sacramento County, supra,* 42 Cal.2d at p. 244.) "Any action of the responsible public officials showing an assumption of control over the road" was sufficient recognition that the road was a public highway. (*Ibid.*) Evidence that El Dorado County's superintendent of roads sent road equipment to that portion of the road with instructions to make repairs on it supported the inference of implied acceptance by the county. (*Id.* at pp. 243-244.)

In 1955, the Legislature "nullified" the holding in *Union Transportation,* by amending section 941 to provide that no public or private road would become a county highway, nor would any county liability for maintenance attach, until accepted by resolution of the board of supervisors. (*Benitez* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 918, 921 [144 Cal.Rptr. 15].) Next came the 1957 legislation adding section 1806, providing in identical terms: "No public or private street or road shall become a city street or road until and unless the governing body, by resolution, has caused said street or road to be accepted into the city street system; nor shall any city be held liable for failure to maintain any road unless and until it has been accepted into the city street system by resolution of the governing body." (Stats. 1957, ch. 1397, § 1, p. 2731.)

In 1963, the Legislature enacted section 989, which provided: "Except as otherwise specifically provided in this code, upon the annexation of territory to a city, all right, title and interest of the county, including the underlying fee where owned by the county, in and to any county highway within such territory, shall vest in the city and shall thereupon constitute a city street. All right, title and interest of a county in and to any county highway included within territory heretofore annexed to a city is hereby determined to have vested in such city as a city street. For the purpose of this section, 'county highway' shall have the meaning ascribed to that term by Section 960.5." (Stats. 1963, ch. 281, § 1, p. 1041.) With the 1967 amendments, section 989 was extended to include incorporations.

█ As a result, while section 1806 by its terms applied to *public and private* streets and roads, section 989 applied only to county highways, which, for purposes of section 989, was defined in section 960.5 to include only *public* routes.[4] Moreover, section 989 addressed only the consequences of certain events—annexation and incorporation—whereas section 1806 was

---

[4]"The term 'county highway' . . . shall be deemed to include, but not be limited to, any public highway, road, street, avenue, alley, lane, drive, way, place, court, or trail, or any purported county highway, public highway, road, street, avenue, alley lane, drive, way, place, court, or trail." (§ 960.5)

not similarly limited. Thus, not only is section 989 the later enacted statute, it is the more specific of the two statutes. Both characteristics argue strongly for the priority of section 989 over section 1806. (Cf. *Carlton Santee Corp. v. Padre Dam Mun. Water Dist.* (1981) 120 Cal.App.3d 14, 29 [174 Cal.Rptr. 413].)

The City, however, contends that the phrase "Except as otherwise specifically provided in this code" in the version of section 989 addressed in *Rink* compelled the conclusion that the Legislature intended section 989 to be subordinate to section 1806 and that in so treating section 989, *Rink* was correct and controls this case. We conclude otherwise.

In *Rink*, the owners of residential lots in the Inspiration Heights area of the City of Cupertino brought suit to force the city to improve certain dirt trails abutting plaintiffs' property. The trails had been drawn into a 1917 subdivision map but not dedicated to public use. In 1946, two owners of the trails quitclaimed their interests to the county " 'for use as a public road and highway.' " (*Rink v. City of Cupertino, supra*, 216 Cal.App.3d at p. 1365.) The plaintiffs bought their lots in 1968. In 1976, the property was still within the county's jurisdiction but lay within the city's sphere of influence. In 1980, Cupertino annexed Inspiration Heights. In 1986, the plaintiffs demanded that Cupertino " 'improv[e] the streets to a safe and usable condition under applicable subdivision requirements . . . .' " (*Ibid.*) The city rejected the claim, and the lawsuit followed. On appeal from the grant of the city's motion for summary judgment, the Court of Appeal held that section 1806 controlled the case.

The court framed the issue on appeal as "whether the City [of Cupertino] lost its immunity under section 1806 by annexing the subject roadways." (*Rink v. City of Cupertino, supra*, 216 Cal.App.3d at p. 1367.) The court continued, "At the time the City annexed Inspiration Heights in 1980, section 1806 was already the governing law. Under that law, the City had the right to accept any roadway into its city street system. The power to accept implies the power to reject. The City's power of choice was not nullified by the historical account of how the roadways became county highways. Therefore, the fact that the roadways were dedicated and accepted as county highways prior to the annexation is immaterial." (*Ibid.*)

We agree with this reasoning to the extent it reflects the conclusion that section 1806 required affirmative action by a city before a public or private street or road became a city street or road. However, *Rink* goes on to state that when the city annexed Inspiration Heights in 1980, ". . . it did so

subject to its explicit power under section 1806 not to accept into its city street system any roadway that might not meet the safety, engineering, soils, and other feasibility standards for city streets. Indeed, the vesting of 'all right, title and interest of the county . . . in and to any county highway within the territory involved' in the acquiring city and the constitution thereof into city streets under section 989, is not absolute. That section expressly recognizes an exception: 'Except as otherwise specifically provided in this code . . . .' Section 1806 comes under that exception." (*Rink v. City of Cupertino*, *supra*, 216 Cal.App.3d at p. 1368.) We part company with *Rink* over this treatment of the relationship between sections 1806 and 989 because we conclude that sections 1806 and 989 are easily reconciled.

At the time *Rink* was decided, under section 1806 no public or private street or road became an existing city's street or road unless the city's governing body accepted it, and no existing city could be held liable for failure to maintain a road unless the city accepted the road by resolution of its governing body. However, under section 989, a newly created city automatically acquired all of the county's right, title and interest in any county highway located within the boundaries of the new city. The only arguable ambiguity in either section appears in section 989's prefatory phrase "Except as otherwise specifically provided in this code." We find that this phrase does not refer expressly to the earlier enacted section 1806 and cannot reasonably be implied to refer to 1806, which did not mention annexations or incorporations. Instead, we conclude that the reference to other specific provisions in the code was intended to include sections other than 1806, such as section 1725.

Sections 1720 to 1724 provide for creation, by mutual consent of the two governments, of a county highway within a city. Once the formal process, initiated by the particular county and consented to by the particular city, is completed, the existing or new street within the city is a county highway. Section 1725 provides, however, that when a county highway so created by mutual consent extends into an unincorporated area of the county and that area is later annexed by the city, "the portion annexed shall continue to be a county highway until a resolution of relinquishment is adopted" by the county board of supervisors. We believe this is the sort of exception to the general rule of automatic transfer of county title to a city contemplated by the prefatory phrase in section 989. Thus, on examination, we find sections 989 and 1806 unambiguous and easily reconciled.

Our interpretation of the relationship between the two statutes gives meaning to both statutes—a cardinal goal of statutory interpretation.

(*Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690, 723 [166 Cal.Rptr. 331, 613 P.2d 579].) The City, however, endorses the *Rink* decision's interpretation and explains the relationship between sections 1806 and 989 as follows: ". . . a city automatically gains the *right* to take title to county roads pursuant to section 989, subject to no objection of the county. It exercises that right to accept title by resolution pursuant to section 1806." Contrary to the City's assertion, such an interpretation does not give force to both statutes. Instead, it reads into section 989 qualifying language conditioning a city's automatic acquisition of title on lack of a county's objection. The interpretation ignores section 989's unequivocal proviso that county title "shall vest" in a city upon incorporation or annexation. Such an interpretation also violates one of the principal rules of statutory construction by rendering section 989 a nullity. If section 1806 were an exception to section 989, and a city merely acquired the right to take title if a county did not object, there appears to be no circumstance under which title to a county highway lying within an annexed territory or newly incorporated city would mandatorily vest in the city, as provided in section 989's phrase "shall vest." "[W]e are not willing to assume that the Legislature has enacted a nullity[.]" (*Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 378, fn. 11 [267 Cal.Rptr. 569, 787 P.2d 976].)

Since, as we have demonstrated, sections 989 and 1806 were susceptible of an interpretation which harmonized and gave full meaning to each section as written at the time of the *Rink* decision, the 1991 legislation abrogating *Rink* did no more than clarify existing law. As the City acknowledges, the Legislature's statement of its intent in enacting the 1991 legislation is clear. The City contends, however, that the 1991 legislation did not merely clarify existing law, but made changes in the law sufficient to compel this court to disregard the Legislature's statement. The City maintains that the deletion of the prefatory phrase in section 989 and the addition of the phrase "Except as provided by Section 989, or by Section 57329 or 57385 of the Government Code" to the beginning of section 1806 was such a change. On the contrary, that change simply reinforced the accuracy of the Legislature's statement of intent: to abrogate *Rink*, which misconstrued the relationship between sections 1806 and 989.

The City also points to the addition of subdivisions (b) and (c) to section 989 and to the addition of Government Code sections 57329 and 57385 as changes which render the 1991 legislation more than clarification of existing law. However, the City does little more than list these amendments and offers nothing of substance which, in the context of this appeal, convinces us to override the Legislature's clear statement of its intent. ■ As a result,

giving due deference to the Legislature's expressed intent, we honor the well-established precept that ". . . the enactment of a statute or an amendment to a statute for the purpose of clarifying preexisting law or making express the original legislative intent is not considered a change in the law; . . . it simply states the law as it was all the time, and no question of retroactive application is involved." (*City of Redlands* v. *Sorensen* (1985) 176 Cal.App.3d 202, 211 [221 Cal.Rptr. 728].) Consequently, we do not reach the issues concerning retroactivity raised by the City.

ROR asserts that the absence of any definition of what constitutes "city standards" in subdivision (c) of section 989 and Government Code sections 57329 and 57385 renders the 1991 legislation unconstitutionally vague. ROR cites only *Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755 [221 Cal.Rptr. 779, 710 P.2d 845], in support of its argument and misconstrues as the holding a single sentence concerning prevention of arbitrary and discriminatory enforcement, appearing in the midst of the court's description of principles relevant to a vagueness challenge. *Cranston* held instead that a provision in a city personnel rule authorizing employment termination for " 'conduct unbecoming an employee of the City Service' " was properly construed as including conduct unbecoming a police officer and had been properly applied in terminating a discharged city police officer. (*Id.* at pp. 769-772.) ROR offers a series of rhetorical questions apparently intended to illustrate the confusion ROR claims will ensue from the lack of a definition of "city standards" in the 1991 legislation.

We reject the contention. "Many, probably most, statutes are ambiguous in some respects and instances invariably arise under which the application of statutory language may be unclear. So long as a statute does not threaten to infringe on the exercise of First Amendment or other constitutional rights, however, such ambiguities, even if numerous, do not justify the invalidation of a statute on its face. ■ In order to succeed on a facial vagueness challenge to a legislative measure that does not threaten constitutionally protected conduct . . . a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that 'the law is impermissibly vague *in all of its applications.*' . . . [Citation.]" (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1201 [246 Cal.Rptr. 629, 753 P.2d 585] [deciding, in part, that although the language of Proposition 51, modifying the common law rule governing potential liability of multiple tortfeasors, left open a number of issues of interpretation and application for decision in future cases, those questions did not justify striking the measure on its face].) ROR has not met this burden.

In its respondent's brief, the City refers to three claims made in connection with the City's demurrer and offers them as alternative grounds on which it asks this court to affirm the summary judgment. We decline the request.[5]

## DISPOSITION

The judgment is reversed.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.

A petition for a rehearing was denied December 1, 1995, and the petition of respondent City Council of the City of Malibu for review by the Supreme Court was denied January 24, 1996.

---

[5]Based on our disposition, the materials of which the City and the County have requested we take judicial notice are of no consequence.