[No. F022427. Fifth Dist. Jan 9. 1996.]

In re the Marriage of TONI SUE and EDWARD WAYNE THOMPSON.
TONI SUE THOMPSON, Appellant, v.
EDWARD WAYNE THOMPSON, Respondent.

**COUNSEL**

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White and M. J. Hamilton, Deputy Attorneys General, for Appellant.

No appearance for Respondent.

**OPINION**

**THAXTER, J.**—The trial court vacated a renewal of judgment which set forth that Edward Wayne Thompson (respondent) owed the County of Stanislaus (County) $4,694.17 in child support arrears, finding that the County was estopped from collecting additional principal or interest after January 1994 under the principles of equitable estoppel and accord and satisfaction. Mrs. Thompson, by the County (collectively appellant), challenges the ruling. We will conclude there is no evidence supporting either accord and satisfaction or estoppel and will accordingly reverse.

### FACTS AND PROCEDURAL HISTORY

Commencing July 15, 1981, respondent was ordered to pay $90 a month through the Stanislaus County District Attorney Family Support Division (DAFSD) for the support of his child born in December 1973. Respondent paid no support through 1984. In 1985, the child's support rights, including the right to collect arrears, were assigned to the County by operation of law because the child was receiving Aid to Families with Dependent Children (AFDC) from the County. (Welf. & Inst. Code, § 11477.)

According to County records, of the $90 monthly support payments respondent was obligated to make, he paid $600 plus $612 by tax intercept in 1985; $525 in 1986; $175 plus $594 by tax intercept in 1987; $275 in 1988; $450 plus $273.10 by tax intercept in 1989; $750 in 1990; $700 in 1991; $900 plus $120 by tax intercept in 1992; $900 plus $117 by tax

intercept in 1993; and $3,138 in January 1994. That left $4,694.17 in arrears as of February 1994 ($4,655.38 in principal and $38.79 in interest).[1]

On January 13, 1994, respondent wanted to buy or refinance a house in Wyoming, where he was then living, and apparently had difficulty obtaining financing because of a recorded abstract of support.[2] He telephoned the Stanislaus County DAFSD office and left a message requesting information on the balance due on his child support obligations. In response, the County sent respondent a copy of a computerized ledger page indicating "TOTAL MIN/DUE" of $3,138. On January 25, 1994, respondent sent a check for that amount to the County.

On March 10, 1994, the DAFSD filed an "Application for Renewal of Judgment" of respondent's child support obligation, setting forth that $4,694.17 was due as of February 1994. Respondent objected to the renewal on a number of grounds including he had paid the full amount of principal stated to him to be owing, and an assessment of interest was barred by the passage of time. The County challenged his claims. In a declaration executed on June 11, 1994, respondent stated the "sale/refinance went through upon the abstract being paid." The County indicated it had not filed a satisfaction of judgment in the case in Wyoming. At the hearing on June 16, 1994, respondent's counsel represented respondent was "still in the process of trying to refinance."

After the hearing, the court commissioner recommended the County be estopped from collecting any additional principal and interest from respondent after January 1994:

". . . Respondent requested an amount due. Family Support provided that amount, and it was paid promptly and accepted. Clearly, obligors should be able to contact Family Support and pay off the balances due on their accounts. As with any other creditor, they should be secure that when they have paid off the account that their payment is final and there will be no other action taken against them.

"The principles of equitable estoppel and accord and satisfaction control in this case."

---

[1]If respondent had made timely support payments, he would have paid $8,505 ($90 × 94.5 months). To date he has paid $10,129. However, under sections 695.220 and 695.221 of the Code of Civil Procedure, the County was required to credit $6,279.48 of that amount to interest accrued on late payments rather than to principal, hence the large amount of principal outstanding.

[2]A California judgment for child support can be made a lien on the obligor's real property by recording an abstract or certified copy of the judgment in the county where the property is located. (Code Civ. Proc., § 697.320, subd. (a)(1).)

In a review hearing pursuant to Code of Civil Procedure section 640.1,[3] the superior court adopted the commissioner's recommendation. The County appeals from that order.

DISCUSSION

*AFDC Reimbursement*

■    Federal statutes and regulations require that parent recipients of AFDC assign to the state as a condition of receiving benefits any right to support which their children may have, including the right to support arrearages. (*City and County of San Francisco* v. *Thompson* (1985) 172 Cal.App.3d 652, 656 [218 Cal.Rptr. 445].) Welfare and Institutions Code section 11477, subdivision (a) provides that receipt of AFDC benefits operates as such an assignment by operation of law.

Welfare and Institutions Code section 11350, subdivision (a)(1), a so-called relative responsibility statute, provides in pertinent part: in any case of separation of a parent from children which results in AFDC benefits being granted to that family, the noncustodial parent shall be obligated to the county for an amount equal to the amount specified in an existing court order. The purpose of the statute is to recoup benefit payments, alleviate the burden on taxpayers, and ensure that as the number of needy children rises, benefits to each child will not be reduced. (*City and County of San Francisco* v. *Thompson*, *supra*, 172 Cal.App.3d at pp. 657-658.) Under section 11350 of the Welfare and Institutions Code, respondent was obligated to pay Stanislaus County $90 a month for the period between July 15, 1981, and May 31, 1989 (when the child began to reside with him), a period of 94½ months.

As set out above, respondent paid this obligation sporadically. ■    A defaulting parent is required to pay interest on support arrears. (*County of Los Angeles* v. *Salas* (1995) 38 Cal.App.4th 510, 513 [45 Cal.Rptr.2d 61].) "A judgment for child . . . support, including all lawful interest and penalties computed thereon, is enforceable until paid in full." (Fam. Code, § 4502.) The lawful interest rate (7 percent before 1983, 10 percent since then) is specified by statute and accrues as to each installment when each installment becomes due. (§§ 685.010, subds. (a) & (b), 685.020, subd. (b).) It is statutorily required that partial payment of an interest-bearing child support obligation must be applied first to the current month's support, and then to reduce the interest accrued; any remaining amount of the partial payment is credited to reduce the principal. (Former § 695.220, subd. (e), now § 695.221.) Any unpaid principal remaining continues to accrue interest. (§ 685.010, subd. (a); *In re Marriage of Perez* (1995) 35 Cal.App.4th 77,

---

[3]Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

81 [41 Cal.Rptr.2d 377] [court erred in waiving interest due on child support arrears].) The DAFSD credited respondent's payments in accordance with section 695.211.

Under the applicable statutes, there was no denial of due process if respondent was not advised he owed interest on the unpaid child support. Interest accrues as a matter of law, and parents are charged with knowledge of the law. (*County of Los Angeles* v. *Salas, supra,* 38 Cal.App.4th at p. 516.)[4]

*Renewal of Child Support Judgments*

■ Accrued child support arrearages are treated like a money judgment. (*In re Marriage of Perez, supra,* 35 Cal.App.4th at p. 80.) Generally, a money judgment is enforceable for 10 years after entry, but the enforcement period may be extended by renewal of the judgment. (§§ 683.020, 683.120, subd. (a).) A judgment for child support is exempt from the renewal requirement. It is enforceable until paid in full, even after the child reaches 18 years. (§ 683.130, subd. (c)(1); Fam. Code, §§ 4502, 4503.)

Though unnecessary, renewal of a child support judgment is of economic benefit to the judgment creditor. When an installment money judgment is renewed, the amount of the lump-sum renewed judgment includes past due installments, costs, and accrued interest. (§ 683.150, subd. (c).) Thus, renewal allows for compounding of interest. (See 8 Witkin, Cal. Procedure (3d ed. 1985) Enforcement of Judgment, § 30, p. 50.)

The renewal process is simple. The creditor seeking renewal files an application with the court which entered judgment. The application must contain information necessary to compute the amount of the judgment as renewed. (§§ 683.120, subd. (a), 683.140, subd. (d).) Simply filing the application renews the judgment in the new amount. (§§ 683.120, subd. (b), 683.150, subd. (a).) The creditor then serves notice of renewal of the judgment on the debtor. (§ 683.160, subd. (a).) Within 30 days after service,

---

[4]Section 695.211, which became operative September 27, 1994, after the events at issue in this case, provides:

"(a) Every money judgment or order for child support shall provide notice that interest on arrearages accrues at the legal rate.

"(b) The notice provisions required by this section shall be incorporated in the appropriate Judicial Council forms.

"(c) Upon implementation of the Statewide Automated Child Support System (SACSS) prescribed in Section 10815 of the Welfare and Institutions Code and certification of the SACSS by the United States Department of Health and Human Services, whenever a statement of account is issued by the district attorney in any child support action, the statement shall include a statement of an amount of current support, arrears, and interest due."

the judgment debtor may move to vacate the renewal. (§ 683.170, subd. (b).) The motion may be based "on any ground that would be a defense to an action on the judgment." (§ 683.170, subd. (a).) At the hearing on the motion, the renewal may be vacated, or a different renewal may be entered, if the court determines that the amount of the judgment as renewed is incorrect. (§ 683.170, subd. (c).)

*Grounds for Vacation of Renewal*

(a)  *Accord and Satisfaction*

■  The court may vacate renewal of the judgment on any ground that would be a defense to an action on the judgment. (§ 683.170, subd. (a).) That the judgment was satisfied by an accord and satisfaction is such a defense. (See § 724.010, subd. (a) [a money judgment may be satisfied by the judgment creditor's acceptance of a lesser sum in full satisfaction of the judgment]; *Schwartz* v. *Cal. Claim Service* (1942) 52 Cal.App.2d 47, 55-56 [125 P.2d 883]; and see *Colby* v. *Colby* (1954) 127 Cal.App.2d 602 [274 P.2d 417] [agreement that lump-sum payment would discharge further child support installments].) When a money judgment is satisfied, the judgment creditor must immediately file with the court an acknowledgment of satisfaction of judgment. (§ 724.030.)

■  In this case, no acknowledgment of satisfaction was filed. Rather, the court vacated the judgment after finding, by implication, that the DAFSD's acceptance of respondent's payment of $3,138, the amount the DAFSD printout indicated was due, constituted an accord and satisfaction. Appellant contends the court's order is an abuse of discretion because there was no evidence the DAFSD reached an accord and satisfaction with respondent. Appellant is correct.

■  An accord and satisfaction is the substitution of a new agreement for and in satisfaction of a preexisting agreement between the same parties. The usual purpose is to settle a claim at a lesser amount. (Civ. Code, §§ 1521, 1523; *Moving Picture etc. Union* v. *Glasgow Theaters, Inc.* (1970) 6 Cal.App.3d 395, 402 [86 Cal.Rptr. 33].) The elements of an accord and satisfaction are: (1) a bona fide dispute between the parties, (2) the debtor sends a certain sum on the express condition that acceptance of it will constitute full payment, and (3) the creditor so understands the transaction and accepts the sum. (*Thompson* v. *Williams* (1989) 211 Cal.App.3d 566, 571 [259 Cal.Rptr. 518]; *Robertson* v. *Robertson* (1939) 34 Cal.App.2d 113, 117-118 [93 P.2d 175] [action for spousal support arrears].)

An accord and satisfaction may be implied. (*Thompson* v. *Williams, supra,* 211 Cal.App.3d at p. 571.) Whether a transaction constitutes an accord and

satisfaction depends on the intention of the parties as determined from the surrounding circumstances, including the conduct and statements of the parties, and notations on the instrument itself. (*Wallace* v. *Crawford* (1937) 21 Cal.App.2d 394, 404, 405 [69 P.2d 455].) For example, in *Thompson* v. *Williams*, *supra*, an action between two attorneys to recover a referral fee, the court found an accord and satisfaction as a matter of law and sustained summary judgment for Williams. The court concluded Williams made a clear offer to compromise Thompson's claim by proffering a payment of $114,000, after a period of "dickering back and forth," on a "take it or leave it" basis. Further, Thompson clearly understood the nature of the offer by responding, " 'Fine, I'd like to pick up the money now.' " Thompson's acceptance of the check constituted an agreement that his claim was thereby compromised and settled. Any uncommunicated reservations Thompson had about accepting Williams's final offer did not invalidate the accord and satisfaction. (211 Cal.App.3d at p. 574.)

Intent of the parties to make a final settlement generally is a question of fact. (*Conderback, Inc.* v. *Standard Oil Co.* (1966) 239 Cal.App.2d 664, 680 [48 Cal.Rptr. 901]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 898, p. 805.) ▆▆▆ However, in this case, there is no evidence that either party intended to compromise the County's AFDC reimbursement arrears claim.

First, the circumstances surrounding the transaction do not support an inference that respondent's tender of the check was intended to constitute an offer to settle all the DAFSD's claims against him. When he tendered the check in January 1994, respondent mistakenly believed he was paying the total amount he owed to the County based on the DAFSD ledger page. He did not inform the DAFSD he was tendering the check in settlement of all claims. Nor did he relay to the DAFSD an express condition that its acceptance of his check would constitute full payment of his AFDC reimbursement arrearages. Any uncommunicated intentions respondent had when tendering the check did not constitute an offer to compromise. Likewise, there is no evidence the DAFSD understood that respondent's check was to be accepted in full discharge of his obligations. Therefore, the court's conclusion the parties reached an accord and satisfaction is not supported by the evidence.

This conclusion is bolstered by Civil Code section 1526, subdivision (a) which provides in part: if the debtor tenders a check as full discharge of a disputed claim, "and the words 'payment in full' or other words of similar

meaning are notated on the check or draft," acceptance does not constitute an accord and satisfaction if (a) the creditor protests by deleting the notation, or (b) the acceptance was inadvertent or without knowledge of the notation. Respondent's check does not state "payment in full" or any similar notation. Therefore, the DAFSD's acceptance of the check does not constitute an accord and satisfaction under Civil Code section 1526.

### (b) *Equitable Estoppel*

■ Courts have held that the doctrine of estoppel may apply to the determination of whether the debtor has satisfied or otherwise discharged a child support arrears obligation. (See, e.g., *In re Marriage of Trainotti* (1989) 212 Cal.App.3d 1072, 1075 [261 Cal.Rptr. 36]; *In re Marriage of Smith* (1989) 209 Cal.App.3d 196, 202-204 [257 Cal.Rptr. 47]; *In re Marriage of Ayo* (1987) 190 Cal.App.3d 442, 452 [235 Cal.Rptr. 458].) The Courts of Appeal disagree as to whether an estoppel will arise against a county's assigned claim for child support, based upon the behavior of the custodial parent. (See, e.g., *In re Marriage of Smith, supra*, at pp. 203-204 [father could assert the estoppel defense he had against mother based on her concealment of the children]; *In re Marriage of Kelley* (1986) 186 Cal.App.3d 613, 620-621 [231 Cal.Rptr. 6] [no estoppel even if mother engaged in concealment prior to assignment]; *State of Washington* ex rel. *Burton* v. *Leyser* (1987) 196 Cal.App.3d 451, 457 [241 Cal.Rptr. 812] [Court accepted concealment as a defense to support arrearages in general, but noted, "Quite different considerations would be present if a public agency had provided support for the benefit of the children and was seeking reimbursement. A public agency cannot be estopped because of the conduct of the parents."].) The issue is currently before the Supreme Court. (*In re Marriage of Comer* (1994) 42 Cal.App.4th 1404 [33 Cal.Rptr.2d 842], review granted Dec. 15, 1994 (S043162).)

Only a few courts have addressed whether the doctrine of estoppel applies to a public entity attempting to collect AFDC reimbursement based on the county's own conduct rather than the conduct of the parents. In *In re Marriage of Mena* (1989) 212 Cal.App.3d 12, 20 [260 Cal.Rptr. 314], the court rejected the father's estoppel claim, finding no affirmative act or representation on the part of the county. In dictum, it added, "Moreover, the doctrines of estoppel and laches will not be applied against a county when to do so would defeat a policy adopted for the benefit of the public, namely, a county which provides public assistance to a custodial parent and children shall have the right to reimbursement from the primary obligor." (Accord, *In*

*re Marriage of Lugo* (1985) 170 Cal.App.3d 427, 435-436 [217 Cal.Rptr. 74] [no estoppel based on county's failure to act for five years which father claimed "lulled him into a false sense of security"].)

We need not decide whether public policy considerations should bar an estoppel in this case because, in any event, the facts do not establish all the elements necessary for an estoppel. ■ Estoppel requires: (1) the party to be estopped knew the facts; (2) the other party was ignorant of the true facts; (3) the party intended his conduct would be acted upon, or acted in a manner that the party asserting the estoppel had a right to believe it so intended; and (4) the other party relied upon the conduct to his injury. Where one of the elements is missing, there can be no estoppel. (*Golden West Baseball Co.* v. *City of Anaheim* (1994) 25 Cal.App.4th 11, 47 [31 Cal.Rptr.2d 378]; *Hair* v. *State of California* (1991) 2 Cal.App.4th 321, 328-329 [2 Cal.Rptr.2d 871]; 11 Witkin, Summary of Cal. Law, *op. cit. supra*, Equity, § 177, p. 859.) The doctrine acts defensively only. It operates to prevent one from taking unfair advantage of another but not to give an unfair advantage to one seeking to invoke the doctrine. (*In re Marriage of Umphrey* (1990) 218 Cal.App.3d 647, 658 [267 Cal.Rptr. 218].)

■ In this case, the record does not establish County knew the "facts" regarding respondent's child support arrears and he was ignorant of them as of January 1994. The DAFSD and respondent were equally capable of calculating the principal amount of child support owed and the payments made. Further, as noted in *County of Los Angeles* v. *Salas, supra,* 38 Cal.App.4th 510, interest on the child support judgment accrued as a matter of law, and respondent is chargeable with knowledge of the law. (*Id.* at p. 516.) Second, in response to respondent's telephone message request for the amount due, the County sent a photocopied ledger page showing "TOTAL MIN/DUE" $3,138. Even if the County intended that its conduct would be acted upon, and respondent would pay that amount, respondent cannot show he relied on the erroneous representation to his injury.

Respondent's position seems to be that he was disappointed at discovering shortly after he thought he had paid off the debt that the ledger amount was wrong and he owed more because he was assessed interest. However, no evidence shows that he suffered any injury, harm, or detriment by simply paying an amount which was undisputably owing. In fact, respondent's own declaration indicates that he benefited from the payment because it facilitated the real property purchase or refinancing transaction in Wyoming. Moreover, there is no inequity in assessing avoidable interest sums against a

father whose delayed payments likely caused hardship or inconvenience to the mother. (*In re Marriage of Perez, supra*, 35 Cal.App.4th at p. 81.)

## DISPOSITION

Judgment (order vacating renewal of judgment) reversed. Costs to appellant.

Martin, Acting P. J., and Buckley, J., concurred.