[No. D035336. Fourth Dist., Div. One. Apr. 2, 2001.]

SUSAN C. DUPONT, Plaintiff, v.
THOMAS A. DUPONT, Defendant and Respondent;
COUNTY OF SAN DIEGO, Intervener and Appellant.

**[Opinion certified for partial publication.¹]**

¹Pursuant to *California Rules of Court*, rule 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Mary Roth and Mary Tilton, Deputy Attorneys General, for Intervener and Appellant.

Dennis O. Seymour, Jr., for Defendant and Respondent.

OPINION

**HUFFMAN, Acting P. J.**—This is an appeal by intervener County of San Diego (County)[2] from an order of the family law court finding a November 7, 1978 "Modified Findings and Order Re: Support," concerning "the existing support obligation" of Thomas A. Dupont (Thomas) to Susan C. Dupont (Susan)[3] for child support, was an installment judgment subject to accruing interest "as to each installment on the date the installment becomes due." (Code Civ. Proc.,[4] §§ 685.010, 685.020, subd. (b).) County challenges the propriety of the court's current order essentially arguing the court misconstrued that portion of the 1978 order dealing with child support arrearages Thomas owed on the original judgment of child and spousal support payable in installments as a new installment judgment rather than a mere statement of the "total amount of accrued arrears and a payment thereon . . . for the convenience of the parties." We disagree and affirm.

FACTUAL AND PROCEDURAL SUMMARY

Thomas and Susan married on April 18, 1964. Before they separated on May 15, 1970, they had three children together: Anthony J., born in 1964; Thomas D., born in 1966; and Andrea J., born in 1970.

On December 6, 1972, an interlocutory judgment of dissolution of marriage was entered, awarding Susan custody of the three children. Among other things, the judgment provided Thomas pay to Susan "the sum of $85.00 per child per month [for] a total of $255.00 per month, commencing

---

[2]The San Diego County District Attorney, Family Support Division, has intervened in this dissolution action for the purpose of enforcing the support awards. (See 42 U.S.C. §§ 601-617, 651-669; Fam. Code, §§ 4002, 17304, 17400, 17402, 17404, 17406 [added by statute eff. Jan. 1, 2000; formerly Welf. & Inst. Code, §§ 11475.1, 11350, 11350.1, 11478.2]; Welf. & Inst. Code, § 11477.)

[3]We refer to the parties by their first names, not out of familiarity or disrespect, but for ease of reference and because such is the preferred practice in family law cases. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1 [274 Cal.Rptr. 911].)

[4]All statutory references are to the Code of Civil Procedure unless otherwise specified.

forthwith and continuing until each of the children reach majority, becomes emancipated, or until further order of this court . . ." and that he pay her "as and for her support and maint[e]nance the sum of $110.00 per month commencing November 1, 1972, and continuing for a period of three years, or until [Susan] remarries, whichever occurs first." Because Thomas was $1,000 in arrears to Susan for child support and spousal support under a previous temporary support order, the judgment also ordered him to pay Susan such sum at the rate of $15 or more per month, so that combined, Thomas would pay "the child support, spousal support, and arrearage, in the sum of $380.00 per month to [Susan] in two equal payments of $190.00 on the first day and fifteenth day of each month, commencing November 1, 1972."[5]

On February 22, 1974, after a hearing on Susan's order to show cause (OSC) regarding contempt for alimony and Thomas's OSC regarding modification of alimony, the court recognized the 1972 order for support and arrearages was valid; found Thomas in arrears for support in the total sum of $2,560, including $1,560 in spousal support; found him in contempt "on 12 consecutive counts"; but suspended imposition of sentence "on the condition that commencing the month of March, 1974 [Thomas] pay through the Bureau of Revenue and Recovery of the County of San Diego, . . . the total sum of $380 per month."

On November 7, 1978, after the court had considered documentary and oral evidence on County's OSC regarding contempt for support and wage assignment, the court rendered its "Modified Findings and Order Re: Support" in which it "ordered that the existing order be modified as follows: that [Thomas] pay $85.00 per child for a total sum of $255.00 per month, effective August 1, 1978, payable by Wage Assignment, as and for support to the Department of Revenue and Recovery, . . . and continuing each month thereafter and until further order of this court."[6] The 1978 order also provided as follows: "Support obligation as used herein is that support obligation as referred to and defined in State and Federal Statutes and Regulations. This support obligation is hereby found to be $9,000.00 through May, 1978, and is the existing support obligation. That [Thomas] shall repay said sum of $9,000.00 at the rate of $15.00 per month, effective August 1, 1978, payable by Wage Assignment, and continuing each month thereafter until said sum is paid in full or until further order of this Court. In

[5]The judgment also noted Thomas was in arrears to the County of San Diego, Bureau of Revenue and Recovery in the sum of $1,785 as of November 3, 1972. No further mention of this debt appears in the record or on appeal.

[6]Susan's spousal support ended under the original judgment after November 1975 and was thus not included in this order.

applying [Thomas's] support payments, the Department of Revenue and Recovery is ordered to apply these payments on the said existing support obligation and the future continuing accruing support obligation as appears necessary under State and Federal Statutes and Regulations."

The wage and earnings assignment order issued by the court in light of this order provided that a total of $270 be deducted a month, with $255 being applied to the current child support obligation and "$15.00 per month [being applied] toward support obligation," which was noted to be the sum of $9,000.

On December 14, 1990, County sent Thomas's employer notice that it was ordered to deduct $15 per month as to the amount of $6,780 in arrears. Thomas received a letter dated October 3, 1996, from County in response to his request for an audit or payment record of his account, which indicated his balance was $4,590, "which may not include interest." Thomas received a letter from County dated October 10, 1997, advising him that after an audit to include interest on his account of child support debt he owed $20,887.17, which included $20,315.17 in interest calculated at "seven percent (7%) on balances accrued before 1983, and ten percent (10%) on balances accrued after 1983." Copies of County's audit were sent to Thomas and his attorney.

On April 1, 1999, Thomas filed an OSC to set arrearages, complaining he had paid the arrearages as ordered under the 1978 order at the rate of $15 per month and had never been advised interest would be accruing even though he had made all the payments. Thomas attached copies of his own audit of payments on the arrears as of December 1996, stating he owed $5,496.74 in arrears at that time. County responded that interest accrued at the legal rate as each payment was due under the 1972 interlocutory judgment, that it had no responsibility to compute the interest for Thomas, and that there could be no retroactive modification of arrears. The matter was continued several times to permit County to review the audits.

On October 19, 1999, Thomas filed points and authorities, citing *County of Alameda v. Weatherford* (1995) 36 Cal.App.4th 666 [42 Cal.Rptr.2d 386] (*Weatherford*) and section 685.020, subdivision (b) for his position the 1978 order on "the existing support obligation" or arrears was a money judgment payable in installments and "interest commences to accrue as to each installment on the date the installment becomes due" because "the [1978] judgment [did not] otherwise provide[]" for a different accrual of interest. Thomas's reply to the County's response that interest was due as a matter of law on the accrued $9,000 arrearages total from the time of each missed payment under the original support orders in this case and that *Weatherford*

was in direct contradiction to other authority on the issue of interest on support arrearages, reiterated his position the 1978 support obligation was an installment judgment that does not otherwise provide for interest to commence at some time other than when each installment is due.

At the hearing on the matter,[7] the court ruled the 1978 support obligation order was a money judgment payable in installments, or an installment judgment, under section 685.020, subdivision (b), which in turn controlled how interest would be calculated in this case. In reaching this conclusion, the court made several observations. It first noted that contrary to County's assertion otherwise, *Weatherford, supra,* 36 Cal.App.4th 666 was good law and could not be ignored by the court. It also noted County could have sought an increase in the low arrearage payment Thomas was allowed to pay, which County argued was unfair, sometime before "the year 2000."

County has appealed from the court's order finding the 1978 support obligation order was an installment judgment subject to interest calculated pursuant to section 685.020, subdivision (b).

DISCUSSION

I

*The 1978 Child Support Arrearage Obligation*

As below, County continues to challenge the trial court's interpretation of the 1978 child support arrearage obligation as an installment judgment. Essentially County's assertions boil down to the position that the 1972 order setting arrears and child support in the interlocutory judgment of dissolution and making such payable in installments was the original, controlling "installment judgment" in this case and the subsequent orders entered in response to OSC's regarding contempt or modification of support, which set new total amounts of arrearages and child support payable in installments, are not judgments subject to section 685.020, but rather "peripheral matter[s] regarding proof of payment . . . done as a convenience for the parties and recogniz[ing] the obligor would probably not be in arrears if he or she had the means to pay the entire amount immediately." County thus contends the trial court erred "when it found interest was not due on the original installment judgment." Aside from the fact the trial court did not

---

[7] At the time of the hearing, Thomas's children were ages 30, 34 and 36.

make such finding, we conclude that on the record before us, County's position is just as unsupportable on appeal as it was before the trial court.

Preliminarily we note that County frames the issue on appeal as our interpretation of section 685.020 and the definition of an "installment judgment." Thomas addresses the matter as involving "legal disputes concerning undisputed facts." Our independent review of the record and briefs on appeal reflects the parties do not really dispute the meaning of "installment judgment," agreeing that such term applies "to any order for child support which is payable in monthly installments." Nor is there any real issue concerning the interpretation of section 685.020, which provides: "(a) Except as provided in subdivision (b), interest commences to accrue on a money judgment on the date of entry of the judgment. [¶] (b) Unless the judgment otherwise provides, if a money judgment is payable in installments, interest commences to accrue as to each installment on the date the installment becomes due." Although section 685.020 was not enacted until 1982, four years after the subject arrearages order or money judgment in this case, because the statute was intended to codify existing common law, not to announce a new substantive rule (see Legis. Com. com., 17 West's Ann. Code Civ. Proc. (1987 ed.) foll. § 685.020, pp. 97-98;[8] *Weatherford, supra*, 36 Cal.App.4th at p. 670, fn. 3), the parties are in agreement that the section applies to the accrual of interest in this case.

Rather, County's argument appears to question whether the Legislature intended section 685.020, subdivision (b) to apply to orders requiring monthly installments made after an initial child support order included in the judgment in a dissolution case, i.e., "whether the [L]egislature intended an installment judgment of support to be transformed into an installment judgment for repayment of the support arrears, thus relieving the obligor of interest on the support installments already missed." County's position is that section 685.020 applies only to judgments, not orders, and because there is only one judgment in a case, the Legislature could not have intended to

---

[8]The Law Revision Commission comment made after the 1983 amendment of section 685.020, which inserted subdivision (a) and designated the existing provisions as subdivision (b), basically repeats the Legislative Committee Comment made in 1992 when the section was added to the Code of Civil Procedure. (See Cal. Law Revision Com. com., reprinted at 17 West's Ann. Code Civ. Proc., *supra*, foll. § 685.020, p. 98.) Such comment provides in part: "Subdivision (a) of Section 685.020 continues the general rule as to the time postjudgment interest commences to run. [Citations.] [¶] Subdivision (b) codifies the rule concerning accrual of interest on support judgments payable in installments and extends the rule to other judgments payable in installments. [Citations.] The introductory clause of subdivision (b) also recognizes that in certain circumstances the court may have the authority to order that interest accrues from the date of entry of a judgment rendered in an amount certain but payable in installments. [Citations.]" (*Ibid.*)

relieve an obligor of interest on support installments missed under that judgment by the subsequent entry of court orders setting a repayment schedule for a lump sum of accumulated late installment payments. This premise, however, is inconsistent with the law regarding child support orders and judgments under the Family Law Act,[9] County's concession that "[t]he plain, commonsense meaning of 'installment judgment' applies to any order for child support which is payable in monthly installments," and its acknowledgement that "[a]ccrued arrearages are treated like a money judgment." (See *In re Marriage of Everett* (1990) 220 Cal.App.3d 846, 854 [269 Cal.Rptr. 917] (*Everett*).)

■ County's position also fails to recognize that although child support is a strictly legal right (Fam. Code, §§ 3585, 3591, subds. (a) & (b),[10] formerly Civ. Code, § 4811, subd. (a)), "child support *proceedings*, or where an action to determine arrearages is not a separate action, are equitable proceedings in which the trial court is permitted the broadest discretion in order to achieve fairness and equity. [Citations]." (*In re Marriage of Dancy* (2000) 82 Cal.App.4th 1142, 1148-1149 [98 Cal.Rptr.2d 775] (*Dancy*).) Further, "[w]hile it is true that an order for child support may not be retroactively modified . . . and that accrued arrearages are treated like a judgment for money . . . it must be remembered that such orders are an exercise of the court's equitable power and are designed to compel satisfaction of the child support obligation which exists apart from the marriage status." (*Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 366-367 [124 Cal.Rptr. 101] (*Jackson*), citations omitted.) A trial court maintains continuing equitable jurisdiction to determine the manner in which an order or

---

[9]Section 100 of the Family Code provides: " 'Judgment' and 'order' include a decree, as appropriate under the circumstances." Family Code section 155 states: " 'Support order' means a judgment or order of support in favor of an obligee, whether temporary or final, or subject to modification, termination, or remission, regardless of the kind of action or proceeding in which it is entered." Although these provisions were enacted in 1992 to become operative in 1994, neither made substantive changes, but rather merely recognized that judgment, order and decree were interchangeable terms in family law matters for support unless "the provision or context otherwise requires." (See Cal. Law Revision Com. com., 29C West's Ann. Code Civ. Proc. (1994 ed.) foll. §§ 100 & 155, pp. 19 & 26-27.)

[10]Family Code section 3585 provides: "The provisions of an agreement between the parents for child support shall be deemed to be separate and severable from all other provisions of the agreement relating to property and support of the wife or husband. An order for child support based on the agreement shall be law-imposed and shall be made under the power of the court to order child support."

Family Code section 3591, provides in part: "(a) Except as provided in subdivisions (b) and (c), the provisions of an agreement for the support of either party are subject to subsequent modification or termination by court order. [¶] (b) An agreement may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion order to show cause to modify or terminate."

judgment for child support will be paid. (*Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 858-859 [72 Cal.Rptr.2d 525]; *Jackson, supra,* 51 Cal.App.3d at p. 368.) Recognizing the equitable nature of child support proceedings and the court's inherent discretion to do justice, the court in *Everett* held that an order requiring the party in arrears to pay down such support obligation at a certain rate per month was not a retroactive modification of arrears and was clearly within the court's discretion. (*Everett, supra,* 220 Cal.App.3d at p. 855.)

In addition, former Civil Code section 4380 (now Fam. Code, § 290)[11] provided a trial court with discretion to determine the appropriate remedy for enforcing a child support obligation "regardless of the procedural context in which the issue was raised. [Citations.]" (*In re Marriage of Trainotti* (1989) 212 Cal.App.3d 1072, 1075 [261 Cal.Rptr. 36].) The court's consideration in such circumstances of the extent to which a defaulting parent has satisfied or otherwise discharged the obligation does not violate the prohibition against retroactive modification of the support award. (*Ibid.*)

■ Here, under the OSC for contempt filed by County in 1978, the trial court had the discretion to fashion the appropriate remedy for Thomas's default of support payments he had missed since the 1974 support order, which reiterated the original 1972 support obligation. At that time the court considered written and oral evidence and argument before determining the $9,000 amount of existing support obligation, or arrearages,[12] for which it then ordered payment to County in monthly installments via wage assignment. Because the OSC for contempt was a proceeding to enforce the earlier support order, the support obligation order entered after the hearing was the equivalent of a money judgment for arrearages. (Fam. Code, §§ 100, 155, 290; *Everett, supra,* 220 Cal.App.3d at p. 854.) As to the amount of such judgment, which was essentially one of enforcement on Thomas's arrearages determined or liquidated as of that date (see Fam. Code, §§ 290, 17524, subds. (b) & (c)), the time for the parties to challenge the court's exercise of its discretion in making it payable in $15 monthly installments was on direct appeal. Because no such challenge was ever made, and no party ever came

---

[11]Civil Code section 4380 provided: "Any judgment, order, or decree of the court made or entered pursuant to this part may be enforced by the court by execution, the appointment of a receiver, contempt, or by such order or orders as the court in its discretion may from time to time deem necessary." Family Code "[s]ection 290 continues former Civil Code section 4380 without substantive change and expands the scope of the former provision to apply to the entire Family Code." (Law Revision Com. com., 29C West's Ann. Code Civ. Proc., *supra,* foll. § 290, p. 65.)

[12]Generally, the amount of the existing support obligation includes both the past due installments and the accrued interest. (§ 685.010 et seq.)

into court to modify the 1978 order for support obligation before Thomas filed his OSC to set arrearages in 1999, we, like the trial court, presume the validity of the $9,000 money judgment for arrearages. We also assume, in the absence of any evidence otherwise, that such sum included the interest owing on the arrearages as of that date.[13]

The question then becomes, as the trial court correctly identified, how postjudgment interest is to be calculated on such money judgment for arrearages. As with other money judgments, child support orders accrue postjudgment interest as a matter of law at the legal rate. (§ 685.010, subds. (a) & (b).) Interest on such orders accrues either from the date of entry of a lump sum or noninstallment judgment, or as to each installment of a judgment payable in installments when each becomes due, and such interest continues to accrue for so long as the arrearage remains unpaid, unless the judgment otherwise provides. (§ 685.020, subds. (a) & (b); see *In re Marriage of Thompson* (1996) 41 Cal.App.4th 1049, 1056-1057 [48 Cal.Rptr.2d 882] (*Thompson*); *County of Los Angeles v. Salas* (1995) 38 Cal.App.4th 510, 513-514 [45 Cal.Rptr.2d 61] (*Salas*); *In re Marriage of Perez* (1995) 35 Cal.App.4th 77, 81 [41 Cal.Rptr.2d 377] (*Perez*).)

In this case, the arrearages money judgment was payable in installments, thus squarely falling under subdivision (b) of section 685.020. Because it did not otherwise provide for a different rate of interest accrual, the trial court properly found it was an installment judgment which was subject to accruing interest as to each installment as each became due. (§ 685.020, subd. (b).)

Contrary to County's assertion otherwise, the trial court correctly relied upon *Weatherford* as authority, together with the plain words of section 685.020, in determining the 1978 money judgment was an installment judgment. In *Weatherford*, the arrearage judgment of $28,740 entered in 1978 represented the accumulation of monthly payments Weatherford had owed the County of Alameda over the years for child support for which his children received public assistance. (*Weatherford, supra*, 36 Cal.App.4th at p. 668.) Said amount was ordered to be paid to Alameda County at the rate of $50 per month in two installments, in addition to continuing monthly current child support payments. (*Ibid.*) Weatherford made payments according to such order. (*Id.* at pp. 668-669.) In 1993, after receiving a refund check and letter from Alameda County that noted his existing balance was zero, but that such balance might not reflect all amounts due from him

---

[13]Contrary to County's representations, there is absolutely no evidence in this record to show the total of $9,000 was not from all sources, including principal and interest.

pending an " 'audit of charges and payments and the computation of any interest[,]' " Weatherford received a letter stating he had "both a 'principal balance' of $31,647.69 and an 'interest balance' of $10,110.43 for a 'total balance' of $41,758.12." (*Id.* at pp. 669-670.) Weatherford's denial for equitable relief was reversed on appeal on grounds the arrearages order or judgment fell within an established exception to the general rule that " ' "[i]t was not . . . necessary for the judgment to contain a direction for payment of interest; the obligation follows automatically. [Citations.]" [Citation.]' [Citations.]" (*Id.* at p. 670.) As noted earlier, this established exception is section 685.020, subdivision (b) for money judgments payable in installments.

In this case, as in *Weatherford, supra,* 36 Cal.App.4th 666, there was an arrears order or judgment that required Thomas to pay or reimburse County a certain amount via monthly payments without any provision governing the payment of postjudgment interest. That the judgment was rendered in a slightly different context than in this case does not matter. (See Fam. Code, § 290; *In re Marriage of Trainotti, supra,* 212 Cal.App.3d at p. 1075.) Nor is *Weatherford* contrary to the holdings in *Thompson, supra,* 41 Cal.App.4th 1049, *Salas, supra,* 38 Cal.App.4th 510 and *Perez, supra,* 35 Cal.App.4th 77 as County contends. Each of those cases, as compared to *Weatherford* and this case, concerned defaults of the original child support orders and the setting of the arrearage total for the arrearages money judgment, not an arrearages order or judgment already long determined. For example, if County had truly believed the $9,000 total arrearage amount in 1978 did not properly include interest from Thomas's default on his originally set support obligation, it could have challenged the matter at that time.

In sum, we conclude the trial court here properly relied upon subdivision (b) of section 685.020 to find the $9,000 support obligation order payable at $15 monthly was an installment judgment and on *Weatherford,* to find that "[i]n the absence of an express provision in the [support obligation order] to the contrary, the County's belated attempt to assess postjudgment interest on the entire amount of the judgment from the date of its entry runs afoul of the policy enunciated in . . . section 685.020." (*Weatherford, supra,* 36 Cal.App.4th at pp. 670-671.)

## II

### *Sanctions on Appeal**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote 1, *ante,* page 192.

## DISPOSITION

The order appealed from is affirmed. Sanctions are denied. County will bear the costs on this appeal.

Nares, J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 11, 2001.