30 Cal.Rptr.3d 5 (2005)
130 Cal.App.4th 247
In re the MARRIAGE OF Debbie and Ronald McCLELLAN.
Ronald McClellan, Appellant;
v.
County of San Diego Department of Child Support Services, Respondent.
No. D044442.
Court of Appeal, Fourth District, Division One.
May 25, 2005.
*7 Judith E. Klein, La Mesa, CA, for Appellant.
Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, Margarita Altamirano and Mary Dahlberg, Deputy Attorneys General, for Respondent.
*6 IRION, J.
Ronald McClellan (Ronald) appeals the superior court's denial of his application for an order directing the County of San Diego Department of Child Support Services (County) to omit certain accrued interest from its calculation of his unpaid child support arrearages. Ronald disputes the legal effect of a December 1994 order that determined child support arrearages as of that date and established periodic payments to liquidate the arrearages. Ronald contends that no further interest should have accrued on the arrearages that were the subject of the December 1994 order. The superior court denied the relief sought by Ronald. We affirm.

I. STATUTORY FRAMEWORK
Code of Civil Procedure section 685.020 contains the basic rule for calculating postjudgment interest:
"(a) Except as provided in subdivision (b), interest commences to accrue on a money judgment on the date of entry of the judgment.
"(b) Unless the judgment otherwise provides, if a money judgment is payable in installments, interest commences to accrue as to each installment on the date the installment becomes due."
Further, Code of Civil Procedure section 685.010, subdivision (a) establishes that "[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." (Italics added.)
Delinquent child support payments accrue postjudgment interest under the rules applicable to installment judgments. "Statutory interest on unpaid child support payments accrues as a matter of law as to each installment when each installment becomes due.... [¶] Accrued arrearages are treated like a money judgment for purposes of assessing statutory interest. Unless otherwise specified in the judgment, interest accrues as to each installment when each installment becomes due and continues to accrue for so long as the arrearage remains unpaid." (In re Marriage of Hubner (2004) 124 Cal. App.4th 1082, 1089, 22 Cal.Rptr.3d 549, fn. omitted.) Because accrued arrearages are treated like money judgments, "courts cannot retroactively modify or terminate the arrearages." (Ibid.) "Interest accrues as a matter of law [on unpaid child support], and parents are charged with knowledge of the law." (In re Marriage of Thompson (1996) 41 Cal.App.4th 1049, 1057, 48 Cal. Rptr.2d 882.)
Dupont v. Dupont (2001) 88 Cal.App.4th 192, 194, 105 Cal.Rptr.2d 607, held that an arrearages order establishing a periodic payment toward accumulated child support arrearages is a new "installment judgment" that stops the further accrual of interest on those accumulated arrearages.[1] *8 Dupont based its holding on the view that a court has "equitable jurisdiction to determine the manner in which an order or judgment for child support will be paid" and "the extent to which a defaulting parent has satisfied or otherwise discharged the [support] obligation." (Dupont, at pp. 199-200, 105 Cal.Rptr.2d 607.) According to Dupont, a court could exercise that discretion by issuing a new installment judgment in the form of an arrearages order, with the implicit legal effect of stopping interest from continuing to accrue on support owed for prior periods. (Ibid) Although Dupont did not frame the issue as such, its effect was to give courts discretion to override the basic principle in Code of Civil Procedure section 685.010 that interest continues to accrue on "the principal amount of a money judgment remaining unsatisfied." (Id., subd. (a).)
The Legislature quickly reacted to Dupont's holding that courts have the discretion to cut off the further accrual of interest on child support arrearages set forth in an arrearages order. With the express intent to abrogate Dupont, the Legislature amended Family Code section 155, effective January 1, 2003. (Stats.2002, ch. 539, § 2.) The amendment to Family Code section 155 clarifies that the only "installment judgment" in the support context is the initial support order. (Ibid.) The amendment thus undercuts the foundational assumption of Dupont's analysis: that an arrearages order is a new installment judgment. Specifically, the amendment to Family Code section 155 states:
"For the purposes of Section 685.020 of the Code of Civil Procedure, only the initial support order, whether temporary or final, whether or not the order is contained in a judgment, shall be considered an installment judgment. No support order or other order or notice issued, which sets forth the amount of support owed for prior periods of time or establishes a periodic payment to liquidate the support owed for prior periods, shall be considered a money judgment for purposes of subdivision (b) of Section 685.020 of the Code of Civil Procedure."[2] (Stats.2002, ch. 539, § 2, p. 2526.)
The legislative history makes clear that the Legislature specifically intended to abrogate Dupont to alleviate the confusion and uncertainty that it had caused.
"(1) The California Court of Appeal held in Dupont v. Dupont [, supra,] 88 Cal. App.4th 192, 105 Cal.Rptr.2d 607, that a child support order which calculates the amount of past due support owed under a prior order and sets a monthly amount to reduce past due support constitutes a new installment judgment.
"(2) The decision in Dupont has resulted in disparate application of the rules regarding accrual of interest from order to order, court to court, and county to county for the purpose of calculating interest under Section 685.020 of the Code of Civil Procedure.

*9 "(3) It is therefore the intent of the Legislature to abrogate the holding of the California Court of Appeal in Dupont v. Dupont, to reaffirm that the legislative intent is that no support order or notice issued, which sets forth the amount of support owed for prior periods of time or establishes a periodic payment to liquidate the support owed for prior periods, be considered a money judgment for the purposes of subdivision (b) of Section 685.020 of the Code of Civil Procedure...." (Stats.2002, ch. 539, § 1(a), p. 2526.)
The question before us is whether the amendment to Family Code section 155 applies to the accrual of interest on child support arrearages that were the subject of arrearages orders entered before the amendment took effect on January 1, 2003.

II. FACTUAL AND PROCEDURAL BACKGROUND
Ronald and Debbie McClellan (Debbie) separated in 1986 and divorced in 1987. Ronald was ordered to pay support for their two children. Ronald failed to make many of the required support payments. In a December 20, 1994 order (the December 1994 order),[3] the superior court determined that Ronald owed $16,491.78 in child support arrearages to the County (as Debbie had been receiving public assistance),[4] $21,618.24 in child support arrearages to Debbie plus $9,254.43 in interest accrued as of that date. The December 1994 order directed Ronald to make monthly payments of $250 toward the arrearages, which would increase to monthly payments of $400 six months later.
The December 1994 order did not expressly address whether interest would continue to accrue on the arrearages.[5] During the hearing, counsel for the County stated, "... I'm also asking that the court finds [sic] that interest continues to accrue on the entire unpaid balance, as provided for by law." The court did not explicitly rule on this request but impliedly assumed the continued accrual of interest on arrearages when it remarked that an initial $250 per month payment toward the *10 arrearages "doesn't even begin to pay the interest," and that when the payments rose to $400 per month, Ronald would be "just about breaking even."
Although the December 1994 order did not expressly address whether interest continued to accrue on amounts subject to that order, the County sent Ronald a notice in November 1996 alerting him that $4,293.16 in interest had accumulated on his arrearages obligation to the County, including the arrearages set forth in the December 1994 order and other support payments that Ronald had missed since that time. The County gave him notice that "[t]o avoid additional interest charges, you must pay, within fifteen (15) days from the date of this letter, the amount of $27[,]492.53, which is the total amount due on your account, including the above-stated interest and arrears," and explained that any payments would be applied to any current obligation first, then to interest, then to arrears.
In March 2003 Ronald filed a pleading with the superior court requesting an order directing the County to perform an audit of his child support obligations. The County performed an audit in July 2003, showing (1) that Ronald owed $80,739.88 (including $27,631 in interest) for the pre-December 1994 arrearages and for additional missed support payments through May 1995 when Debbie went off public assistance; and (2) that Ronald owed Debbie $17,075.97, including $1,072 in interest for support payments missed since June 1995. Ronald challenged the County's calculation of interest. He argued that the December 1994 order had the legal effect of stopping the future accrual of interest on all pre-December 1994 arrearages, and he requested that the court order a new audit without the inclusion of the disputed interest.
After considering the parties' briefing on whether the 2003 amendment to Family Code section 155 could be retroactively applied to the December 1994 order, the court rejected Ronald's challenge. The court concluded that interest continued to accrue on the arrearages because the amendment to Family Code section 155 controlled the legal effect of the December 1994 order. Ronald appeals, arguing that "there is no legislative statement of intent that Family Code section 155 be retroactive," and that "to apply Family Code section 155 retroactively violates due process of law." (Capitalization omitted.)

III. STANDARD OF REVIEW
We apply a de novo standard of review to the superior court's analysis of the legal effect of the amendment to Family Code section 155. (See Re-Open Rambla, Inc. v. Board of Supervisors (1995) 39 Cal. App.4th 1499, 1505, 46 Cal.Rptr.2d 822 [applying de novo standard of review in analyzing the effect of amended statute]; Hermosa Beach Stop Oil Coalition v. City of Hermosa Beach (2001) 86 Cal.App.4th 534, 548, 103 Cal.Rptr.2d 447 [retroactivity of new law reviewed de novo].)

IV. DISCUSSION
Generally, we may retroactively apply a new statute "only if it contains express language of retroactivity or if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application." (Myers v. Philip Morris Companies, Inc. (2002) 28 Cal.4th 828, 844, 123 Cal.Rptr.2d 40, 50 P.3d 751.) Even then, "the retrospective application of a statute may be unconstitutional ... if it deprives a person of a vested right without due process of law." (In re Marriage of Buol (1985) 39 Cal.3d 751, 756, 218 Cal.Rptr. 31, 705 P.2d 354.)
*11 As a threshold issue, however, we must determine whether the amendment to Family Code section 155 was indeed a new law to which these retroactivity standards apply or, instead, merely a clarification of existing law. If we decide that the amendment to Family Code section 155 only clarified existing law, then the application of the amendment to Ronald's case need not be analyzed as a retroactivity issue. (See Bowen v. Board of Retirement (1986) 42 Cal.3d 572, 575, fn. 3, 229 Cal.Rptr. 814, 724 P.2d 500 [because the court concluded that the statutory amendment clarified rather than changed existing law, there was "no need to reach [appellant's] arguments regarding the amendment's retroactive application"].)
"`[A] statute that merely clarifies, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment' `because the true meaning of the statute remains the same.'" (McClung v. Employment Development Dept. (2004) 34 Cal.4th 467, 471, 20 Cal.Rptr.3d 428, 99 P.3d 1015, quoting Western Security Bank v. Superior Court (1997) 15 Cal.4th 232, 243, 62 Cal.Rptr.2d 243, 933 P.2d 507; see also GTE Sprint Communications Corp. v. State Bd. of Equalization (1991) 1 Cal. App.4th 827, 833, 2 Cal.Rptr.2d 441 ["Where a statute or amendment clarifies existing law, such action is not considered a change because it merely restates the law as it was at the time, and retroactivity is not involved"].) Thus, "a clarification of existing law ... may be applied to transactions predating its enactment without being considered retroactive. [Citation.] The clarified law is merely a statement of what the law has always been." (Riley v. Hilton Hotels Corp. (2002) 100 Cal.App.4th 599, 603, 123 Cal.Rptr.2d 157.)
To decide whether the amendment to Family Code section 155 merely clarified existing law, we may give "due consideration" to the Legislature's views, but "a legislative declaration of an existing statute's meaning is neither binding nor conclusive in construing the statute." (Western Security Bank v. Superior Court, supra, 15 Cal.4th 232, 244, 62 Cal.Rptr.2d 243, 933 P.2d 507; see also McClung v. Employment Development Dept., supra, 34 Cal.4th 467, 473, 20 Cal.Rptr.3d 428, 99 P.3d 1015.) "A declaration that a statutory amendment merely clarified the law `cannot be given an obviously absurd effect, and the court cannot accept the legislative statement that an unmistakable change in the statute is nothing more than a clarification and restatement of its original terms.'" (McClung, at p. 473, 20 Cal.Rptr.3d 428, 99 P.3d 1015.) Thus, although we may review the legislative history to enlighten our inquiry, the decision as to whether the amendment to Family Code section 155 changed or merely clarified existing law must, in the end, turn on our own analysis.
Applying this approach, we first review the legislative history to determine whether in amending Family Code section 155 the Legislature believed it was merely clarifying existing law. Here, the Legislature stated that the amendment was intended to "abrogate" the holding of Dupont, address the "disparate application of the rules regarding accrual of interest" caused by Dupont, and "reaffirm" the legislative intent that arrearages orders should not be treated as money judgments for the purpose of calculating postjudgment interest. (Stats.2002, ch. 539, § 1(a), p. 2526.) Further, an Assembly committee report explained that "application of the Dupont decision is far from consistent" because Dupont "based its decision on the equitable power of the court to enforce child support orders," so that "whether a support recipient will be ordered *12 to receive all interest owed on a support order will depend on the vagaries of which judge his or her case is before."[6] (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 97 (2001-2002 Reg. Sess.) as amended Aug. 16, 2002, p. 5.)[7] According to the Assembly committee report, the amendment "returns California support law to the intended rule of law prior to the Dupont holding" and "clarifies that the Legislature did not intend to halt the accrual of interest on unpaid child support arrearages where the court issues an order which simply calculates the amount of past due support owed under a prior order and sets a monthly amount to reduce those arrearages." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 97, supra, pp. 1-2.)[8]
We conclude that the Legislature viewed the amendment to Family Code section 155 as a mere clarification of the law. The Legislature indicates an intent to merely clarify existing law where, as here, it "promptly reacts to the emergence of a novel question of statutory interpretation" caused, for instance, by "the disruptive effect of [a] Court of Appeal's decision" (Western Security Bank v. Superior Court, supra, 15 Cal.4th 232, 243, 245, 62 Cal.Rptr.2d 243, 933 P.2d 507) or where, as here, it amends a statute to resolve ambiguity in the existing law. (See Kern v. County of Imperial (1990) 226 Cal.App.3d *13 391, 401, 276 Cal.Rptr. 524 [amendment clarified the law when it was clear that "the intent of the sponsor of the bill was to clarify existing law and remove any ambiguity to specific fact situations"]; Tyler v. State of California (1982) 134 Cal.App.3d 973, 977, 185 Cal.Rptr. 49 [statutory amendment merely clarified existing law when it was enacted in response to "confusion" created by a court decision].)
We next turn to our own evaluation of whether the amendment to Family Code section 155 changed or merely clarified existing law. In undertaking this analysis, we necessarily evaluate whether Dupont, which the Legislature expressly intended to abrogate by amending Family Code section 155, departed from existing law. Having examined Dupont and the surrounding legal context at the time it was decided, we conclude Dupont departed from existing law. The amendment to Family Code section 155 merely clarified the law as it existed prior to Dupont by removing one of the assumptions on which Dupont was based, namely, that an arrearages order is a new money judgment payable in installments.
It has long been the law that an enforceable money judgment comes into existence at the time that a child support payment is missed. (See In re Marriage of Hubner, supra, 124 Cal.App.4th 1082, 1089, 22 Cal.Rptr.3d 549; In re Marriage of Perez (1995) 35 Cal.App.4th 77, 80, 41 Cal.Rptr.2d 377; Jackson v. Jackson (1975) 51 Cal.App.3d 363, 366, 124 Cal. Rptr. 101.) Dupont departed from existing law by determining that a previous judgment is "satisfied or otherwise discharged" by the creation of a new installment judgment and payment plan. (Dupont v. Dupont, supra, 88 Cal.App.4th 192, 199-200, 105 Cal.Rptr.2d 607.) We have found nothing in the law at the time Dupont was decided that compelled this conclusion.
Dupont cited Keith G. v. Suzanne H. (1998) 62 Cal.App.4th 853, 858-859, 72 Cal. Rptr.2d 525; Jackson v. Jackson, supra, 51 Cal.App.3d 363, 366-367, 124 Cal.Rptr. 101; and In re Marriage of Trainotti (1989) 212 Cal.App.3d 1072, 1075, 261 Cal. Rptr. 36, for the principle that "[a] trial court maintains continuing equitable jurisdiction to determine the manner in which an order or judgment for child support will be paid" and to consider "the extent to which a defaulting parent has satisfied or otherwise discharged" a support obligation. (Dupont v. Dupont, supra, 88 Cal. App.4th 192, 199-200, 105 Cal.Rptr.2d 607.) However, those cases all limit their discussion to the court's equitable power to modify the manner in which support payments are made or deemed satisfied (such as reducing the payments or giving credit toward satisfaction of the support obligation when the child goes to live with the paying parent). They do not establish any ability by the court either to deem a judgment "satisfied or otherwise discharged" when no payment or offset exists, or to stop interest from accruing on delinquent support payments.
With its unprecedented holding that an arrearages order is a new installment judgment that supersedes and "satisfie[s] or otherwise discharge[s]" a preexisting child support judgment, thereby stopping the further accrual of interest on the arrearages, Dupont displaced the existing rule that "[i]nterest accrues ... on the principal amount of a money judgment remaining unsatisfied." (Code Civ. Proc., § 685.010, subd. (a), italics added.) Dupont also displaced Code of Civil Procedure section 685.030, which sets forth the circumstances in which interest ceases to accrue on a judgment, all of which require satisfaction of the judgment, as well as *14 Family Code section 4502, which states that "[n]otwithstanding any other provision of law, a judgment for child, family, or spousal support ... including all lawful interest and penalties computed thereon, is enforceable until paid in full. ..." (Italics added).
By clarifying through the amendment to Family Code section 155 that an arrearages order was not a new installment judgment for the purpose of calculating postjudgment interest, the Legislature removed one of the analytical foundations on which Dupont based its holding: that an arrearages order is a new money judgment payable in installments. The amendment to Family Code section 155 simply allowed the basic postjudgment interest rules in the Code of Civil Procedure to continue to control the accrual of interest on delinquent child support payments without the confusion created by Dupont.
Based on this backdrop of the law existing at the time that Family Code section 155 was amended, we conclude that the amendment merely clarified existing law that was already plainly set forth in Code of Civil Procedure section 685.010: A money judgment continues to accrue interest until it is satisfied. (See Western Security Bank v. Superior Court, supra, 15 Cal.4th 232, 243, 252, 62 Cal. Rptr.2d 243, 933 P.2d 507 [amendment was merely a clarification of the law when the court decision that it abrogated had "produced an unprecedented rule without solid legal underpinnings or any real connection to the actual language of the statutes involved"]; Re-Open Rambla, Inc. v. Board of Supervisors, supra, 39 Cal. App.4th 1499, 1510, 46 Cal.Rptr.2d 822 [Legislature's abrogation of Court of Appeal decision that misconstrued current law by incorrectly giving precedence to one statutory provision and ignoring another was a clarification of existing law].)
Having concluded that the amendment to Family Code section 155 merely clarified existing law, we need not address whether the Legislature intended retroactive application of the amendment, or Ronald's argument that his due process rights were violated by retroactive application of a new law. However, we nevertheless point out that were we to reach Ronald's due process argument, we would find no basis to disturb the superior court's finding that there was "no evidence that [Ronald] took any actions whatsoever in reliance on the law as it existed before the amendment." Moreover, even if Ronald had presented such evidence, his reliance would not have been justified. The court indicated at the December 1994 hearing that interest would continue to accrue, and the County sent Ronald a notice in 1996 informing him that interest was accruing on the arrearages that were the subject of the December 1994 order. (See In re Marriage of Bouquet (1976) 16 Cal.3d 583, 592, 128 Cal.Rptr. 427, 546 P.2d 1371 [factors that court considers in determining whether a retroactive law contravenes the due process clause include "the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions"].)
Ronald also argues that even if we determine that the amendment to Family Code section 155 may be retroactively applied to him, we should nevertheless exercise equitable discretion to order that he does not have to pay interest. We reject this argument. Ronald cites no authority indicating that either we or the trial court have such discretion. Further, the accrual of interest is not a discretionary matter *15 but is instead controlled by statute and continues until a judgment is satisfied. (Code Civ. Proc., § 685.010.)

DISPOSITION
The order is affirmed.
WE CONCUR: O'ROURKE, Acting P.J., and AARON, J.
NOTES
[1] Throughout our discussion we use the term "arrearages order" to refer to an order (whether identified as an "order," "judgment" or other type of notice) which, in the language used by Family Code section 155, "sets forth the amount of support owed for prior periods of time or establishes a periodic payment to liquidate the support owed for prior periods." Unless otherwise apparent from the context of our discussion, we use the term "arrearages" to refer to the amount of support owed for prior periods of time that is set forth in an arrearages order.
[2] Prior to this amendment Family Code section 155 contained only what is now its first sentence: "`Support order' means a judgment or order of support in favor of an obligee, whether temporary or final, or subject to modification, termination, or remission, regardless of the kind of action or proceeding in which it is entered." (See Stats. 1992, ch. 162, § 10, p. 468.)
[3] The December 1994 order was designated both as a "judgment" and an "order after hearing" by the boxes checked on the form and was entered as a judgment. We are nevertheless mindful that Family Code section 155 does not preclude such an order from being treated as a money judgment for purposes other than the application of postjudgment interest under Code of Civil Procedure section 685.020, subdivision (b). Our reference to the December 1994 order as an "order" rather than a "judgment" is not meant to imply any view on whether an arrearages order may be properly treated as a judgment for any purpose other than the application of Code of Civil Procedure section 685.020, subdivision (b).
[4] Under the statutory framework that existed during the relevant timeframe, "[f]ederal statutes and regulations require[d] that parent recipients of AFDC [Aid to Families with Dependent Children] assign to the state as a condition of receiving benefits any right to support which their children may have, including the right to support arrearages," and "Welfare and Institutions Code section 11350, subdivision (a)(1), [provided that] in any case of separation of a parent from children which results in AFDC benefits being granted to that family, the noncustodial parent shall be obligated to the county for an amount equal to the amount specified in an existing court order." (In re Marriage of Thompson, supra, 41 Cal.App.4th 1049, 1056, 48 Cal.Rptr.2d 882.)
[5] The December 1994 order stated, "Interest is without prejudice." Based on our review of the record, we do not interpret the statement to relate to whether interest would continue to accrue on the arrearages. It appears from the record that interest was ordered "without prejudice" because there was some confusion at the hearing as to whether the parties had done their math correctly in determining that exactly $9,254.43 in interest had accrued to date.
[6] The Assembly committee report elaborated: "Some courts follow Dupont to provide equitable relief from the enforcement of a support order `at the back end.' Others require Dupont language in all orders, to be applied prospectivelythat is, for all orders, interest does not accrue on the principal balance, just on the missed installments. In some courts, this is only true if the parties stipulate to an order in courtfor out of court stipulations, the pre-Dupont rule can apply. Some courts are making prospective Dupont orders, but including `acceleration clauses' making the full principal balance subject to interest if a specified number of installment payments are missedbut the number of payments varies from court to court, and whether the application of interest to the principal balance goes back to the date of the order or starts as of the date of missed installments is also not standard. What is fascinating, and indeed alarming, is that this inconsistent approach is not only evident from county to county, but can be found from courtroom to courtroom in some counties." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 97 (2001-2002 Reg. Sess.) as amended Aug. 16, 2002, p. 6.)
[7] "Committee reports are often useful in determining the Legislature's intent," although we should "hesitate to accord much weight to an anonymous staff report that was merely summarizing the effect of a proposed bill." (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 646, 648, 59 Cal.Rptr.2d 671, 927 P.2d 1175 [despite this admonition, considering committee report and concluding that it was "fully consistent" with the court's conclusion on legislative intent]; see also People v. Cruz (1996) 13 Cal.4th 764, 773-774, fn. 5, 55 Cal.Rptr.2d 117, 919 P.2d 731 ["it is well established that reports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain"].) We examine the statements in the Assembly committee report with these standards in mind.
[8] Dupont was preceded by County of Alameda v. Weatherford (1995) 36 Cal.App.4th 666, 42 Cal.Rptr.2d 386. Following reasoning similar to Dupont, Weatherford held that because an arrearages order requiring payments to the county did not clearly and definitely provide for accrual of interest on the arrearages, the court could exercise equitable discretion to order that no interest accrued on the arrearages. (Weatherford, at pp. 670-671, 42 Cal.Rptr.2d 386.) The legislative history to the amendment to Family Code section 155 indicated an intent to abrogate Weatherford as well. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 97 (2001-2002 Reg. Sess.) as amended Aug. 16, 2002, p. 7.) We note that neither Weatherford, which was decided in 1995, nor Dupont, which was decided in 2001, had been decided when the December 1994 order issued in Ronald's case.