Filed 11/23/16 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re the Marriage of Deborah A. and Michael L. Wilson. | |
| DEBORAH A. RUPE, Respondent, v. MICHAEL LOUIS WILSON, Appellant; ALAMEDA COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, Respondent. | A140273 (Alameda County Super. Ct. No. H-77183-8) **ORDER DENYING PETITION FOR REHEARING & MODIFYING OPINION** |

**THE COURT:**

Respondent Alameda County Department of Child Support Services's petition for rehearing, filed on November 9, 2016, is denied.

The opinion will be modified as follows: On page 11, second full paragraph, following the first sentence ("Accordingly, we shall remand the matter to the family court to consider whether, in the unusual circumstances of this case, it would be inequitable to allow Mother to enforce some or all of the child support order to the extent it applies to periods that Minor lived with Grandparents"), insert a footnote reading: "It is undisputed that Mother did not receive public assistance on behalf of Minor and that the Department is seeking to collect child support arrearages owed to Mother. This case does not raise

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II(A), II(B), II(D), and II(E).

any issue regarding estoppel against a governmental agency seeking recoupment of governmental payments."

No change in judgment.


Dated: _____ _____, P.J.

Filed 10/27/16 (unmodified opinion)

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re the Marriage of DEBORAH A. and MICHAEL L.  WILSON. | |
| DEBORAH A. RUPE, Respondent, v. MICHAEL LOUIS WILSON, Appellant; | A140273 (Alameda County Super. Ct. No. H-77183-8) |
| ALAMEDA COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, Respondent. | |

Michael Louis Wilson (Father) appeals an order of the family court denying his request for an equitable set-aside of his child support arrearages.  In the published portion of this opinion, we shall remand the matter to allow the family court to exercise its discretion to determine whether it would be inequitable to allow respondent Deborah Rupe (Mother) to enforce the child support order for the period during which the couple's daughter (Minor) was living in the home of Father's parents (Grandparents).

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II(A), II(B), II(D), and II(E).

1

## I.  BACKGROUND

### A. Prior Proceedings

Father married Mother in 1978.  Minor was born in 1979.  In 1981, Mother filed a petition for dissolution of the marriage.  Father's default was entered, and an interlocutory judgment of dissolution was entered later that year.[1]  The family court granted custody of Minor to Mother and ordered Father to pay $200 per month in child support.  A final judgment of dissolution was entered in 1984.

In 1985, the Alameda County District Attorney filed a declaration alleging that Father owed $7,550 in unpaid child support.  Father appeared, in person and with counsel, at a June 10, 1985 hearing at which, by stipulation, the family court ordered him to make payments of $200 per month through withholdings from his wages.  After an evidentiary hearing in July 1985, at which Father was again present and represented by counsel, the family court adjudged him $7,006.19 in child support arrears from November 1981 through June 1985 and ordered him to pay $100 per month in arrears, to be withheld from his wages.

In 1987, Father sought to have the child support payments made to Grandparents during the time they cared for Minor full-time.  By stipulation, the parties agreed that support would be reduced to $100 a month while Minor was living with Grandparents, payable to them, and in October 1987, the court so ordered.  The order also provided that if Minor returned to Mother, ongoing child support would once again be $200 a month, and that upon that increase in child support payments, the arrearages payments would be reduced to $50 a month.  It appears that this order was never modified and Minor lived with Grandparents for the rest of her childhood.

---

[1] The record contains a declaration of personal service of the summons and petition and other documents by a professional process server on Father, on July 20, 1981, at an address in Oakland.  The request to enter default includes a proof of service by mail on Father, on September 14, 1981, at both the Oakland address and an address in Carson City, Nevada.  We grant Father's Motion to Augment Record, dated January 10, 2015.

In 2000, upon Father's motion, the parties entered into a stipulation that Father should receive credit against the arrearages for the child support payments he made to Grandparents from October 1987 onward.  It appears that the reason for the motion was that Grandparents had been forwarding to Mother the child support payments Father had been making to them.

## B.  Current Proceedings

On September 21, 2012, Father filed a request for an order, seeking, as relevant here, stay of enforcement of the child support arrears on the ground he had overpaid Mother; equitable set-aside of the child support arrearages on the ground Minor had lived with Grandparents since she was two years old; credit for child support charged during the time Minor lived with Grandparents; and set-aside of interest on arrearages.  The family court ordered the Alameda County Department of Child Support Services (the Department) to prepare an account history reflecting the prior credits that were ordered and set a long cause hearing.[2]

At the hearing on the matter, Father testified that between the time the child support order took effect in October 1981 and the date Minor turned 18, Minor lived with Mother for two 10-month periods and lived with Grandparents the rest of the time. Father testified he moved to Carson City, Nevada, in 1981 and lived with Grandparents and Minor for about two years.  Between 1981 and 1987, Father made payments to Grandparents, "$100 here, $100 there."  Mother did not provide any money to Grandparents.  Father also testified that when he was paying child support to Grandparents, they would give the money to Mother because they were afraid Mother would remove Minor from their care if they did not do so.

Father testified that he did not recall being served with the divorce papers.

_____

[2] In 2000, the Legislature transferred responsibility for establishing and enforcing child support obligations from county district attorneys to newly-established departments of child support services.  (Fam. Code, § 17304.)  All undesignated statutory references are to the Family Code.

Deborah Wilson (Wilson), who was married to Father after his divorce from Mother and remained married to him until sometime in the 1990's, testified that with the exception of one 10-month period and one four-month period, Minor lived with Grandparents between 1981 and 1997. The periods Minor lived with Mother were from September 1984 to June 1985, and from September 1985 and January 1986.[3] During the time Minor lived with Grandparents, Mother did not provide any financial support for Minor. Father contributed about $200 a month from 1981 to 1984, and about $400 a month between January 1986 and September 1987. Until 1995, Grandparents gave Mother all of their child support checks because they were afraid Mother would remove Minor from their care.

Wilson testified that she and Father began living together in Carson City in 1981, and that they lived with Grandparents for about a month before they got their own apartment in the same complex. Minor remained with Grandparents rather than living with Father and Wilson because Grandparents were afraid Mother would take Minor if she lived with Wilson and her children. Father and Wilson moved away from Carson City in 1982 or 1983.

The trial court denied Father's request for equitable set-aside or stay of enforcement of the child support arrearages for the period Minor lived with Grandparents, based upon its conclusion that Father did not support Minor in his home and there was insufficient evidence of the extent to which he supported her in Grandparents' home. The court also denied the request for credit for the times that Minor lived with Grandparents. The court ordered that, pursuant to section 155, interest would accrue against the child support arrears from the time each original support payment was due, rather than from the time Father failed to make the payments required under the 1985 and 1987 orders that he repay arrearages.

---

[3] The court sustained a hearsay objection to Wilson's reliance on a document she had seen granting Grandparents guardianship as of January 5, 1986; Wilson then testified without objection that she knew the dates Minor lived with Rupe of her own personal knowledge.

4

The court entered its "Findings and Order After Hearing" on August 8, 2013. On September 4, 2013, Father filed a motion for reconsideration based on the assertedly new or different facts that (1) Father had additional evidence to support his contention that Minor lived with Grandparents during most of her childhood and (2) Father was never served with the petition for dissolution and request for child support. (Code Civ. Proc., § 1008, subd. (a).) The family court denied the motion, concluding both that it was untimely and that there was no new information or other basis for reconsideration.

## II. DISCUSSION

### A. Jurisdiction

Father contends he was never properly served with the 1981 petition for dissolution and request for child support and did not become aware of the child support order until 1985, and therefore all orders in this case were void ab initio.

The first time Father contended he was not served with the petition and request for child support was in September 2013, when he filed his motion for reconsideration. The first time he argued that this lack of service rendered all subsequent orders void was in his opening brief on appeal. While we have discretion to consider questions of law on undisputed facts for the first time on appeal (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2008) 168 Cal.App.4th 185, 195, fn. 8), this is not such a case.

This record does not provide undisputed evidence that Father was not served with the original papers. As we have noted, the record contains a proof of personal service on July 20, 1981 of the petition and related papers at an address in Oakland. Father contends that the record shows he had moved to Carson City to live with Grandparents and Minor by June 1981, and it was therefore physically impossible for him to have been personally served in Oakland in July 1981. The evidence he relies on is his own testimony that he "[m]oved to Carson City in '81" and lived there for about two years, and that he did not recall being served with the papers. He also relies on somewhat inconclusive statements in declarations submitted in connection with his motion for reconsideration. Grandparents each declared, "In June of 1981 [Father] resided with [Minor] at my

5

residence in Carson City, Nevada. No notice of Dissolution of Marriage of Child Support Papers were ever received or served to that address." Father declared, "When I moved to Carson City, Nevada, with [Wilson and two children], it was known and seen from June 1981 through 1984 that [Minor] was in the care and custody of my parents." Wilson made a similarly worded declaration. This evidence does not show unambiguously that the proof of service was false or that Father did not receive or could not have received personal service of process in Oakland in July 1981.

In any case, even if Father was not properly served with the petition and initial support order, his subsequent participation in this case amounted to consent to the court's jurisdiction. As recently explained in *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 7–8, " 'A general appearance occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed.' [Citation.] Such participation operates as consent to the court's exercise of jurisdiction in the proceeding. 'Unlike jurisdiction of the subject matter . . . jurisdiction of the person may be conferred by consent of the person, manifested in various ways' including a 'general appearance.' [Citations.] By generally appearing, a defendant relinquishes all objections based on lack of personal jurisdiction or defective process or service of process. [Citations.] A general appearance has these effects even if the defendant is unaware that a jurisdictional objection is available. [Citation.] Such an appearance is 'equivalent to personal service within this state of the summons and a copy of the petition upon [the defendant].' [Citation.]" (And see Code Civ. Proc., § 410.50, subd. (a); Cal. Rules of Court, rule 5.68(c); see also *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1226 [" '[a] judgment is void for lack of jurisdiction of the person where there is no proper service of process on *or appearance by a party to the proceedings*' "] (italics added); *California Overseas Bank v. French American Banking Corp.* (1984) 154 Cal.App.3d 179, 184 ["If the defendant . . . 'asks for any relief which can only be granted upon the hypothesis that the court has jurisdiction of his person, his appearance is general' "].)

6

As we have explained, Father appeared in this matter, in person and through counsel, at a June 1985 hearing at which he was ordered to make child support payments and at a July 1985 hearing at which the court adjudged him $7,006.19 in child support arrears. In 1987, he sought to have his child support payments made to Grandparents rather than Mother and to have the amount of his child support and arrearages payments modified, and the court entered a stipulated order to that effect. In 2000, he again entered into a stipulation, which the court approved, regarding credit against his arrearages. In each of these matters—beginning almost 25 years before he first raised his objection— Father recognized the authority of the court to proceed without protesting that he had not been properly served, and indeed, in 1987 and 2000, Father affirmatively sought the assistance of the court. Father has consequently relinquished his objections based on defective service of process.

## B. Extrinsic Fraud

Father contends the 1981 support order was void because Mother obtained it by extrinsic fraud when she falsely claimed she had custody of Minor. The term "extrinsic fraud" is " 'given a broad meaning and tend[s] to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing. . . . [¶] In contrast, mistake is intrinsic and not a valid ground for setting aside a judgment 'if a party has been given notice of an action and has not been prevented from participating therein.' [Citation.] In this circumstance, the mistake goes to the merits of the prior proceeding which the moving party should have guarded against at the time. [Citation.]" (*In re Marriage of Thorne and Raccina* (2012) 203 Cal.App.4th 492, 505.) "[W]here 'the aggrieved party had a reasonable opportunity to appear and litigate that party's claim or defense, fraud occurring in the course of the proceeding is not a ground for equitable relief. The theory is that these matters will ordinarily be exposed during the trial by diligence of the party and his or her counsel, and that the occasional unfortunate results of undiscovered perjury or other intrinsic fraud must be endured in the interest of stability of final judgments.' [Citation.]" (*Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 827.) Here, the misrepresentation Father alleges Mother committed is at most intrinsic fraud,

going to the merits of the action rather then to Father's ability to have a fair adversary hearing, and—while it may have the unfortunate effect of creating a windfall for Mother, who allegedly also did not support Minor—is not a ground upon which we can set aside the child support order.

In any case, as we have explained, Father knew Minor lived with his parents and he had multiple opportunities to draw the matter to the family court's attention from at least 1985 onward and failed to do so. Under section 3691, subdivision (a), a motion to set aside a support order on the ground of fraud must be brought within six months after the date on which the complaining party discovered or reasonably should have discovered the fraud. (See *In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 910–911 [time limits of section 3691 apply even in cases of extrinsic fraud].) It is too late now for Father to attempt to set aside the support order on this ground.

## C. Equitable Stay of Enforcement

Father contends the family court misunderstood the scope of its discretion and erred in declining to use its equitable powers to stay enforcement of the child support arrears that accrued during the periods that Minor lived with Grandparents.

Section 3651 provides that, with exceptions not relevant here, "a support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." However, as Father points out, it is within the court's equitable power to deny *enforcement* of the arrears on equitable grounds under certain circumstances. (*Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 366–367 (*Jackson*).)

In the cases the parties cite, in which the *Jackson* rule has been applied to deny enforcement of child support arrears, the parent who was obligated to pay child support had actually cared for the child in his or her own home. In *Jackson*, the father had been ordered to pay child support to the mother. After the child began living with the father, with the mother's consent, the father ceased paying child support. (*Jackson*, *supra*, 51 Cal.App.3d at p. 365.) The mother later obtained a writ of execution on child support arrears for the time the child was living with the father, and the father sought an order

quashing the writ of execution. (*Ibid*.) The trial court concluded the father's request was an attempt to modify a prior child support order and denied it. (*Id*. at pp. 365–366.) The appellate court vacated the order and remanded the matter to the trial court for reconsideration; it noted that the father had provided a home for the child and in doing so had expended amounts well in excess of the court-ordered $750 a month. The court concluded that in the circumstances, the trial court would have been well within its discretion in quashing the writ of execution or permitting only partial enforcement "on the basis that [the father] had directly *discharged his obligation* or on the basis of equitable considerations." (*Id*. at pp. 368–369, italics added.) In *In re Marriage of Trainotti* (1989) 212 Cal.App.3d 1072, 1075, on similar facts, the appellate court concluded the trial court "should have considered whether the debtor [father] had *satisfied or otherwise discharged the obligation* imposed by the original order. [Citations.] Such consideration does not violate the prohibition against retroactive modification of the support award. [Citation.]" (Italics added.) The court went on, "We think it clear that the trial court erred by refusing to consider whether appellant had satisfied his obligation by furnishing [the child], with the approval of his former wife, a home and support that was equal to or in excess of the court-ordered amount." (*Id*. at pp. 1075–1076; and see *In re Marriage of Okum* (1987) 195 Cal.App.3d 176, 182 [trial court had discretion to permit only partial enforcement of child support arrears against parent who had sole physical custody during period in question]; *Helgestad v. Vargas* (2014) 231 Cal.App.4th 719, 733, 736 [equitable child support credit may be given during period couple resumed living together in attempt at reconciliation; to have benefit of these "*Jackson*" credits, cohabiting payor spouse has burden to show "the provision of actual in-kind or in-the-home support"].)

Father contends that the family court's discretion to deny enforcement of a support order is not limited to circumstances in which the obligor parent cares for a child in his or her own home, but is broad enough to embrace a situation in which *neither* parent is raising the child at home. We believe that, in the peculiar circumstances of this case, Father's position has merit.

9

We recognize that the *Jackson* line of cases is based on the theory that a parent can discharge the child support obligation by caring for the child at the parent's own expense. (See *In re Marriage of Beilock* (1978) 81 Cal.App.3d 713, 732 [explaining that the motion in *Jackson* "did not involve an effort to modify retroactively a judgment for support. It was an attempt to show that the obligation had been discharged"].) The situation here differs from those cases in that Father did not provide for Minor in his own home. However, we are not persuaded that this fact causes it to fall outside the trial court's equitable power to prevent enforcement of some or all of the child support arrears.

There is undisputed evidence that during most of the time between 1981 and 1987, Father's own parents cared for Minor in their home and Father contributed to Minor's support by providing money to Grandparents. It is reasonable to infer that Grandparents cared for Minor on Father's behalf. Had Minor lived with Mother, and had Grandparents paid Father's monetary obligation to Mother on his behalf, there is no question the obligation would be treated as discharged. We see no reason to treat Grandparents' in-kind discharge of the obligation differently.

In addition, because child support had been ordered in the amount of $200, but the parties stipulated that Father would pay Grandparents only $100, it is reasonable to infer that Grandparents had been providing at least $100, if not $200 worth of care and support to Minor during the times she lived with them. Accordingly, this record does not foreclose a conclusion that Father's obligation to support Minor during the relevant period was discharged, in whole or in part, through Grandparents' care of Minor on his behalf and through the payments he made to them during the period for which Mother seeks arrears.

Moreover, there is no evidence in the record before us that, during the periods between 1981 and 1987, when Minor lived with Grandparents, Mother provided any

support for Minor.[4]  If the facts as presented by Father are true—that is, if Mother is seeking child support arrears for times that she neither cared for Minor nor provided for her financially—enforcement of the arrears might well be nothing more than a windfall to Mother, bearing no relation to any support or care Minor actually received during her childhood.

In reaching this conclusion, we do not ignore that the trial court's denial of Father's request for an equitable stay of enforcement of the child support arrears rested in part on Father's delay in raising the issue.  This delay, the court indicated, made it difficult to determine the extent to which Minor was supported in Grandparents' home and implicated the defense of laches.  However, the family court relied primarily on the theory that Father was not entitled to equitable relief unless he supported Minor in his own home.  We have concluded that the location of Minor's care is not dispositive.

Accordingly, we shall remand the matter to the family court to consider whether, in the unusual circumstances of this case, it would be inequitable to allow Mother to enforce some or all of the child support order to the extent it applies to periods that Minor lived with Grandparents.  In carrying out this inquiry, the court should take into account Grandparents' provision of care for Minor and the extent to which this can be considered to have discharged Father's obligation; the extent of actual financial support provided to Grandparents by Father; the extent of support, if any, provided by Mother; the effect, if any, of the delay in bringing this request for equitable relief; and any other relevant factors.[5]

---

[4] Mother was present when Father and Wilson testified that she provided no support for Minor during these times, and she did not offer any contrary evidence.

[5] Because we do not know what result the family court will reach on remand, we shall address the remainder of Father's contentions in the unpublished portion of this opinion.

11

## D. Interest on Arrears

Before the 2013 hearing, the family court ordered the Department to prepare an updated account history. The principal of the arrears was $7,006.19. The Department calculated interest on the arrears from the date the child support payments were originally due, for a total of approximately $28,000 in principal and interest. Father contends the interest should instead have been calculated from the date he missed each arrears payment ordered by the court in 1985 and 1987, rather than from the dates the child support was originally due between 1981 and 1985; it appears that this calculation would lead to a total amount of approximately $14,000 in principal and interest. The family court ruled against Father on this issue, concluding that under section 155, interest accrued from the date Father missed his original child support payments.

Section 155 provides: " 'Support order' means a judgment or order of support in favor of an obligee, whether temporary or final, or subject to modification, termination, or remission, regardless of the kind of action or proceeding in which it is entered. For the purposes of Section 685.020 of the Code of Civil Procedure, only the initial support order, whether temporary or final, whether or not the order is contained in a judgment, shall be considered an installment judgment. No support order or other order or notice issued, which sets forth the amount of support owed for prior periods of time or establishes a periodic payment to liquidate the support owed for prior periods, shall be considered a money judgment for purposes of subdivision (b) of Section 685.020 of the Code of Civil Procedure."[6]

The final two sentences of section 155 were added in 2002. (Stats 2002, ch. 539, § 2, p. 3046.) In adding them, the Legislature declared its intent to abrogate the holding of *Dupont v. Dupont* (2001) 88 Cal.App.4th 192 (*Dupont*), "to reaffirm that the legislative intent is that no support order or notice issued, which sets forth the amount of

---

[6] Under Code of Civil Procedure section 685.020, subdivision (a), interest begins to accrue on the date of entry of a money judgment; however, under subdivision (b), unless the judgment provides otherwise, "if a money judgment is payable in installments, interest commences to accrue as to each installment on the date the installment becomes due."

support owed for prior periods of time or establishes a periodic payment to liquidate the support owed for prior periods, be considered a money judgment" for purposes of Code of Civil Procedure section 685.020, subdivision (b). (Stats 2002, ch. 539, § 1, p. 3045.)

In *Dupont*, the court concluded that where an arrearages money judgment was payable in installments, it was subject to accruing interest only as each installment became due, not based on the dates the original payments were missed. (*Dupont*, *supra*, 88 Cal.App.4th at pp. 201–202, citing Code Civ. Proc., § 685.020, subd. (b).) The *Dupont* court relied on *County of Alameda v. Weatherford* (1995) 36 Cal.App.4th 666, 668–671 (*Weatherford*), which considered a judgment requiring a parent to reimburse the county in monthly installments for Aid to Families with Dependent Children Public Assistance paid on his behalf, and concluded that under Code of Civil Procedure section 685.020, it was improper to assess postjudgment interest on the entire amount of the judgment from the date of its entry. (*Dupont*, *supra*, 88 Cal.App.4th at pp. 201–202.)

In *In re Marriage of McClellan* (2005) 130 Cal.App.4th 247 (*McClellan*), the court considered whether the 2002 amendment to section 155, which abrogated *Dupont*, applied to arrearages orders made before section 155's effective date. The court concluded that rather than establishing a new rule of law, the amendment "merely clarified existing law that was already plainly set forth in Code of Civil Procedure section 685.010: A money judgment continues to accrue interest *until it is satisfied*." (*McClellan*, at p. 259.)[7] The court reasoned that an enforceable money judgment comes into existence when a child support payment is missed (*id*. at pp. 257–258), and criticized *Dupont* for its "unprecedented holding that an arrearages order is a new installment judgment that supersedes and 'satisfie[s] or otherwise discharge[s]' a preexisting child support judgment, thereby stopping the further accrual of interest on the arrearages." (*Id*. at p. 258.) The court concluded that the amendment to section 155 "simply allowed the

_____

[7] Code of Civil Procedure section 685.010, subdivision (a) provides: "Interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied."

13

basic postjudgment interest rules in the Code of Civil Procedure to *continue* to control the accrual of interest on delinquent child support payments without the confusion created by *Dupont*." (*Id.* at pp. 258–259.) Because the amendment merely clarified existing law, rather than creating new law, it applied to arrearages orders made before it went into effect. (See *id.* at p. 255.)

Father contends the family court erred in ruling that interest should be applied from the time he missed his original support payments; in his opening brief, he ignores *McClellan* and urges us to follow *Dupont* and *Weatherford*. *McClellan* is directly on point and the family court correctly followed it.[8]

Nor are we persuaded by Father's argument, unsupported by citation to authority, that he was deprived of an opportunity to contest the interest charges. Interest on a child support judgment accrues as a matter of law. (*County of Los Angeles v. Salas* (1995) 38 Cal.App.4th 510, 516.)

In considering this issue, we have examined the calculation of interest on the arrears and have found apparent discrepancies. In a number of instances, the calculation of the monthly interest remains the same even where the principal balance declines due to payments Father made. For example, between September 1987 and November 1996, the principal balance declined from $10,482.35 to $7,333.09, yet the monthly interest charged remained the same, $92.76. In other places, the principal balance does not reflect payments Father made. On remand, if the family court declines to grant Father an equitable set-aside of the arrears, it shall review and, if necessary, recalculate the amount due on the arrearages.

---

[8] In his reply brief, Father attempts to challenge *McClellan* on the ground it does not discuss the effect of section 4, which provides that an order made before the operative date of a "new law" is governed by the "old law," defined as "the applicable law in effect before the operative date of the new law." (§ 4, subds. (a)(2) & (e).) *McClellan* makes clear, however, that the 2002 amendment to section 155 clarified existing law rather than establishing new law. (*McClellan*, *supra*, 130 Cal.App.4th at p. 259.)

### E. Exclusion of Hearsay

Finally, Father contends the family court abused its discretion in excluding hearsay evidence of Mother's written agreement that Grandparents would become Minor's guardians. We reject this contention. There is no indication the written agreement was offered in evidence at the hearing or that it was authenticated. (Evid. Code, § 1401.) The family court excluded as hearsay Wilson's testimony that "according to a sworn document that I saw," the guardianship agreement, Mother had relinquished custody to Grandparents on January 5, 1986. However, Wilson went on to testify without objection that she had personal knowledge that between 1984 and the 1997, Minor lived with Mother only from September 1984 to June 1985 and September 1985 to January 1986. Father has not shown that the family court abused its discretion or that he was prejudiced by the court's ruling.

## III. DISPOSITION

The August 8, 2013 order is reversed. The matter is remanded to the family court for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

_____
Rivera, J.

We concur:

_____
Reardon, Acting P.J.

_____
Streeter, J.

15

<u>Rupe v. Wilson (A140273)</u>

| | |
|---|---|
| Trial Court: | Alameda County |
| Trial Judge: | Boydine Hall, Commissioner |
| | |
| Counsel for Appellant: | Michael L. Wilson, in propria persona; Thorkelson Law, Anne E. Thorkelson. |
| Counsel for Respondent Deborah A. Rupe: | Deborah A. Rupe, in propria persona. |
| Counsel for Respondent Alameda County Department of Child Support Services: | Kamala D. Harris, Attorney General; Julie Weng-Gutierrez, Senior Assistant Attorney General; Linda M. Gonzalez, Supervising Deputy Attorney General; Ricardo Enriquez, Deputy Attorney General. |